## FEDERAL TRADE COMMISSION v. HERZOG et al.

### No. 328.

Circuit Court of Appeals, Second Circuit.

July 16, 1945.

W. T. Kelley, Chief Counsel, and Joseph J. Smith, Jr., Asst. Chief Counsel, both of Washington, D. C., and Carl Wheaton, Sp. Atty., of Columbia, Mo., for petitioner.

Samuel S. Isseks, of New York City (Bernard A. Chambers and George R. Raducan, both of New York City, of counsel), for respondents.

Before SWAN, CHASE, and CLARK, Circuit Judges.

SWAN, Circuit Judge.

This case is before us upon a petition by the Federal Trade Commission, pursuant

to section 11 of the Clayton Act, 15 U.S. C.A. § 21, for an order by this court affirming and enforcing a cease and desist order entered by the Commission on July 8, 1942 against the respondents individually and trading as Jack Herzog & Company. The petition alleges that the respondents have failed to obey the Commission's order. This is denied by their answer, which prays that the order of July 8, 1942 be vacated or, if affirmed, that the Commission be directed to take proof, as special master, on the issue of the respondents' violation of the order.

In August 1940 the Commission issued a complaint against the respondents charging them with violations of section 2(c) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C.A. § 13(c). The respondents filed an answer which they subsequently withdrew, substituting therefor an answer that admitted all the material allegations of fact in the complaint, waived a hearing thereon, and authorized the Commission, without further evidence or other intervening procedure, to find such facts to be true. The answer, however, did not admit that the facts alleged in the complaint constituted a violation of the statute. On July 8, 1942 the Commission made findings of fact in accordance with the allegations of the complaint, concluded that the respondents had violated section 2(c) of the Clayton Act as amended, and ordered them forthwith to cease and desist from: "Receiving or accepting directly or indirectly anything of value as brokerage, commission or other compensation or any allowance or discount in lieu thereof from any seller on or in connection with purchases made from such seller (a) when such purchases are made for respondents' own account, or (b) when such purchases are made as agent or buying representative of the purchaser, or (c) when in making such purchases the respondents are acting in fact for or in behalf, or are subject to the direct or indirect control of the purchaser."

The facts alleged in the complaint and found by the Commission may be summarized as follows: The respondents are engaged in business in New York City as commission resident buyers of fur garments. In the course of their business they act as agents for the purchase of fur garments for and in behalf of approximately 80 fur garment retailers and department stores located in the several states of the United States. From such retailers or department stores the respondents receive requisitions to purchase fur garments upon general specifications as to size, style, quality and price. They then call upon various fur garment manufacturers and place the order at the most advantageous price from the standpoint of the buyer. Generally the manufacturer ships the garments so purchased direct to the retail purchaser, although in some instances delivery is arrested to permit inspection by the respondents at their place of business. On such purchase orders the respondents receive from the sellers a commission, generally 5% of the sales price. In such transactions the retailers and department stores are the actual purchasers in whose behalf the respondents have been in fact acting. New York City is the center of the fur garment industry in the United States. In the course of their business the respondents represent fur garment retailers who are in competition with other retailers who undergo expense by maintaining buying offices, retaining the services of "fee" buyers, or sending representatives to New York City to make fur garment purchases.

The respondents argue that they are not agents of the buyers, but independent brokers, and that the first question for decision is whether an independent broker, who receives no compensation from the buyers, is in no way under the control of the buyers, and does not pay to the buyers any part of the commissions received from the sellers, violates section 2(c) of the statute. But this is not the question presented by the record. There is nothing before us concerning the manner in which the respondents do business except what is alleged in the complaint and admitted by their answer.* On this record it stands admitted that the respondents received from sellers commissions on transactions in which they "act as agents for the purchase of fur garments for and on

---

* Their original answer alleged that the respondents are engaged in business as bona fide brokers and selling representatives for numerous manufacturers and wholesalers of goods, from whom they accept commissions for selling serv-

ices performed in their behalf and under their control as their agents in the sale of such goods. But these allegations are irrelevant, since they were superseded by the admissions of the substituted answer.

behalf of" retailers, whose orders they place at "the most advantageous price from the standpoint of the buyer", and "in whose behalf said respondents have been and are, in fact, acting", while other competitive retailers "undergo buying expense by maintaining buying offices, retain the services of fur garment buyers known as 'fee' buyers, or send representatives to New York City to make fur garment purchases." This results in a price discrimination in favor of the retailers who do business with the respondents, and is contrary to the purpose and the language of the statute, 15 U.S.C.A. § 13(c), which prohibits the payment of compensation by one party to the other, or to the other's agent, although preserving the right of either party to pay his own agent for services rendered in connection with the sale or purchase. See Quality Bakers of America v. Federal Trade Commission, 1 Cir., 114 F.2d 393, 398; Fitch v. Kentucky-Tennessee Light & Power Co., 6 Cir., 136 F.2d 12, 15, 149 A.L.R. 650; Webb-Crawford Co. v. Federal Trade Commission, 5 Cir., 109 F. 2d 268, 270, certiorari denied 310 U.S. 638, 60 S.Ct. 1080, 84 L.Ed. 1406; Great Atlantic & Pacific Tea Co. v. Federal Trade Commission, 3 Cir., 106 F.2d 667, 673, certiorari denied 308 U.S. 625, 60 S.Ct. 380, 84 L.Ed. 521; Biddle Purchasing Co. v. Federal Trade Commission, 2 Cir., 96 F.2d 687, 691, certiorari denied 305 U.S. 634, 59 S.Ct. 101, 83 L.Ed. 407. We must take the record as the parties made it, and on that record the Commission's order must be affirmed.

■ The Commission asks us to enter a decree commanding obedience to its order without regard to whether the respondents have violated it. The statute provides, 15 U.S.C.A. § 21, that if a person against whom a cease and desist order has been issued "fails or neglects to obey such order of the commission * * * while the same is in effect, the commission * * *

may apply to the circuit court of appeals * * * for the enforcement of its order * * *." This provision is identical with the enforcement provisions of section 5 of the Federal Trade Commission Act, 38 Stat. 719, before its amendment in 1938, 15 U.S.C.A. § 45. In construing those provisions we have held that after determining that the Commission's order is valid, the question of its violation must be referred to the Commission to take evidence and report on that issue before an enforcement order will be entered. Federal Trade Commission v. Balme, 2 Cir., 23 F.2d 615, 621, certiorari denied 277 U.S. 598, 48 S.Ct. 560, 72 L.Ed. 1007; Federal Trade Commission v. Standard Education Society, 2 Cir., 86 F.2d 692, 698, reversed in part on other grounds, 302 U.S. 112, 58 S.Ct. 113, 82 L.Ed. 141. We are asked to reconsider these decisions, but we see no reason to do so; no contrary decision has been cited. The same procedure has been followed in the Fourth Circuit, Federal Trade Commission v. Baltimore Paint & Color Works, 41 F.2d 474, 476; and the Seventh has adopted an even stricter rule, namely, that it will not consider the validity of the order until a violation of it has been shown. Federal Trade Commission v. Standard Education Society, 14 F.2d 947, 948. In the case at bar the violations of the Clayton Act which the Commission found occurred nearly five years ago; its order was issued on July 8, 1942 and its petition for enforcement was not filed until March 1945. The respondents' answer to the petition asserts that "at least since July 8, 1942" they have done business only as agents of the sellers of fur garments. Under these circumstances the customary procedure of requiring a hearing on the issue of violation seems especially appropriate.

The order is affirmed and the proceeding is referred to the Commission as special master to hear and report whether the respondents have violated the provisions of the order.