**FEDERAL TRADE COMMISSION v.
STANDARD BRANDS, Inc.**

No. 73, Docket 21742.

United States Court of Appeals
Second Circuit.

Argued Feb. 6, 1951.

Decided March 30, 1951.

On Rehearing June 4, 1951.

The facts are stated in the reports and orders of the Federal Trade Commission, reported in 29 F.T.C. Decisions 121, 30 F.T.C. Decisions 1117, and 46 F.T.C. Decisions —.

The Commissioner's order of June 15, 1939, as amended by the order of May 1, 1940, ordered Standard Brands to

"cease and desist from discriminating in price between different purchasers of bakers' yeast of like grade and quality, either directly or indirectly:

"(1) By selling said bakers' yeast at different prices based upon the total quantity or volume purchased or required monthly by the respective purchasers, as set forth in Schedule A of Paragraph Ten of said findings of fact;

"(2) By selling said bakers' yeast at different prices based upon the total quantity or volume purchased (whether from the respondents or from any other source) over a period of time by the respective purchasers, where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce in which respondents or any of their customers are engaged, or to injure, destroy or prevent competition with respondents or any of their customers, except where said differentials in price, based upon the quantities or volume purchased from the respondents during such period of time by said respective purchasers, make only due allowance for differences in the cost of manufacture, sale or delivery resulting from the differing methods or quantities in which such bakers' yeast is to such purchasers sold or delivered during the period of time for which such differentials are allowed;

"(3) By means of price differences resulting from selling said bakers' yeast to a single purchaser at prices based upon the total quantity or volume purchased (whether from the respondents or from any other source) during a period of time by such purchaser, irrespective of the quantities or volume delivered by the respondents to the separate plants, factories, bakeries, or warehouses of such purchaser where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce in which respondents or any of their customers are engaged, or to injure, destroy or prevent competition with respondents or any of their customers, except where said differentials in price make only due allowance for differences in the cost of manufacture, sale or delivery resulting from the differing methods or quantities in which said bakers' yeast is to such purchasers sold or delivered;

"(4) By selling said bakers' yeast to certain of such purchasers at so-called 'off-scale' prices as described in Paragraph Twelve of said findings of fact, even though the differentials in price of any given price scale make only due allowance for differences in the cost of manufacture, sale or delivery resulting from the differing methods or quantities in which said bakers' yeast is to such purchasers sold or delivered during the period of time for which such differentials in price are allowed."

W. T. Kelley, John W. Carter, Jr., Washington, D. C. (James W. Cassedy, Washington, D. C., of counsel), for petitioner.

W. Crosby Roper, Jr., Charles F. Barber, Washington, D. C. (Newell W. Ellison, Washington, D. C., of counsel), for respondent, Henry Weigl, New York City, Covington, Burling, Rublee, O'Brian & Shorb, Washington, D. C., of counsel.

Before L. HAND, Chief Judge and SWAN and FRANK, Circuit Judges.

FRANK, Circuit Judge.

1. *Affirmance of the order.*

Respondent makes no substantial argument against affirmance except as to clause

(4). That clause does not contain the minimum qualifying language required by the statute, i. e., "where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce in which any of [respondent's] customers are engaged, or to injure, destroy or prevent competition with any of its customers." The omission seems to have been inadvertent. The Commission's findings, sufficiently supported by the evidence, sustain that clause of the order if read to include that qualification. The Commission's complaint is broad enough to cover that clause so qualified. Standard Brands, in the long interval between the entry of the order and the present proceedings in this court, did not seek to have the order judicially reviewed. In the circumstances, we direct that clause (4) be modified to include the omitted language; and, in that revised form, we affirm that clause, and, accordingly, the entire order.

## 2. *Enforcement of the order.*

■ The Commission, without first obtaining a court affirmance of the order, held a hearing to determine whether respondent had violated the order. At this hearing, respondent had full opportunity, of which it availed itself, to offer evidence and in all respects to be fully heard. On the basis of this hearing, the Commission made findings to the effect that respondent had violated clauses (2), (3) and (4) of the order; and the Commission, on the basis of the hearing record and its findings, asks this court, if it affirms the order, to enforce those clauses.

Standard Brands argues that this procedure for enforcement is fatally defective because an affirmance of the Commission's order must precede any effort to determine whether it has been violated. We think the cases cited by respondent[1] do not so hold. True, it has been customary for a court, upon affirming such an order, to appoint a master to make an inquiry as to violation, and, usually, to name the Com-

mission a's master. But there is no reason why, now that we have affirmed the order, we may not, in the exercise of our discretion, treat the Commission's findings as if the Commission had been appointed our master, since, in the Commission hearings, respondent was accorded all its procedural privileges. (If, in future cases, a respondent, believing the Commission's order invalid, wishes to avoid what it may consider the needless expense of such a hearing if the order is invalid, such a respondent can promptly test the order's validity by a petition to review the order.) We turn, then, to the question whether Standard Brands has violated the order.

(a) Violation of the second clause of the order.

Standard Brands on May 1, 1940, in compliance with the order, filed report showing a scale of prices with stated prices of stated quantities. The Commission promptly accepted this report as compliance. Subsequently, in 1945, Standard Brands adopted a new scale.

■ We think that the new scale included new brackets of quantities and prices which involved new relations between customers; that Standard Brands therefore had the burden of proving that the new differentials were (responsive to changed conditions or otherwise) based on "due allowances for differences in the cost of manufacture, sale or delivery resulting from the differing methods or quantities" in which Standard Brands bakers' yeast was sold to purchasers; that no such proof was made; and that the evidence sustains the Commission's findings of substantial lessening of competition between Standard Brands and some of its competitors.

■ However, we think that all this did not prove a violation of the Commission's order. That order was issued after a proceeding in which the Commission's complaint charged that Standard Brands' sales unlawfully affected competition among Standard Brands' customers. The com-

---

1. F. T. C. v. Herzog, 2 Cir., 150 F.2d 450; F. T. C. v. Balme, 2 Cir., 23 F.2d 615; F. T. C. v. Paramount Famous Lasky Corp., 2 Cir., 57 F.2d 152; F. T. C. v. Baltimore Paint & Color Works, 4 Cir., 41 F.2d 474; F. T. C. v. Standard Education Society, 7 Cir., 14 F.2d 947; F. T. C. v. Morrissey, 7 Cir., 47 F.2d 101.

plaint did not charge, nor did the Commission (in connection with its order) find, that Standard Brands' activities had had any unlawful effects upon its own competitors.

Had the evidence in the initial proceedings shown injury to such competitors, perhaps—in line with current doctrines concerning variance in civil and criminal cases —the Commission might properly have amended its complaint to conform to the proof, giving respondent an adjournment (if one was requested and there was surprise) to offer further evidence. This liberal doctrine has of recent years been applied to proceedings of several administrative agencies;[2] but the older cases seem not to have applied it to proceedings of the Federal Trade Commission.[3] Whether it should be applied to this Commission's proceedings, we need not here consider, although in another context, we have recently held that doctrines applicable to other agencies should apply to this Commission.[4] For the Commission did not amend the complaint, nor, in the initial proceedings, did it make any findings concerning injury to Standard Brands' competitors. The order, therefore, must be read in the light of the complaint and the findings accompanying the order. Consequently, the findings made, in connection with the violation hearings, of reduction of competition with Standard Brands' competitors do not show a violation of clause (2) of the order.

Perhaps this conclusion may seem somewhat formalistic. For the Commission may at once begin a new proceeding pursuant to a complaint charging violations of the Act

as to Standard Brands' competitors, and, in such a proceeding, the Commission may properly consider the evidence heretofore taken in the violation hearing. Nevertheless, this seeming formalism is desirable in fairness to respondent since, in such a new proceeding, it may be able to offer evidence proving that its actions were not unlawful *vis a vis* its own competitors.

(b) Violation of the third clause of the order.

■ The Commission found, on the basis of ample evidence, that for some seven months in 1945 Standard Brands violated this clause. This violation ceased, and thereafter no such violation occurred. Nevertheless, the finding justifies enforcement.[5]

(c) Violation of the fourth clause of the order as modified.

■ Standard Brands argues that Section 2 of the Clayton Act[6] permits sales at prices below its scale where those sales were made "in good faith to meet an equally low price of a competitor." What Standard Brands did may be described in general terms as follows: A competitor of Standard Brands was selling to a customer a given quantity at a stated price which was less than Standard Brands' price for that same quantity. In order to obtain some of this customer's business, Standard Brands would sell that customer a smaller quantity at a price below its competitor's price for that smaller quantity and also below its own scale price for that smaller quantity (but not below its competitor's or its own scale price for the larger quantity sold to that customer by the competitor).[7]

2. See, e.g., Kuhn v. Civil Aeronautics Board, D.C.Cir., 183 F.2d 839; N. L. R. B. v. Mackay Radio & Telegraph Co., 304 U.S. 333, 349, 58 S.Ct. 904, 82 L.Ed. 1381; N. L. R. B. v. Greater New York Broadcasting Corp., 2 Cir., 147 F.2d 337; N. L. R. B. v. Grieder Machine Tool & Die Co., 6 Cir., 142 F.2d 163, 166.

3. Federal Trade Commission v. Gratz, 253 U.S. 421, 427, 40 S.Ct. 572, 64 L.Ed. 993; Gimbel Bros. v. Federal Trade Commission, 2 Cir., 116 F.2d 578, 579.

4. Herzfeld v. Federal Trade Commission, 2 Cir., 140 F.2d 207, 209.

5. F. T. C. v. Goodyear Tire & Rubber Co., 304 U.S. 257, 260, 58 S.Ct. 863, 82 L. Ed. 1326; Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 230, 59 S.Ct. 206, 83 L.Ed. 126; Gelb v. F. T. C., 2 Cir., 144 F.2d 580, 581; N. L. R. B. v. Sewell Mfg. Co., 5 Cir., 172 F.2d 459, 461; Pueblo Gas & Fuel Co. v. N. L. R. B., 10 Cir., 118 F. 2d 304, 307.

6. 15 U.S.C.A. § 13.

7. The Commission's findings in this respect read as follows:

"Paragraph Seven: (a) The record contains details of the accounts of 242

customers of respondent which were introduced as evidence tending to show violations of paragraph (4) of the order to cease and desist. It appears that in 15 of these sales were made in accordance with the scale prices, while in 226 sales were made at prices which were below those established by respondent's scale of prices in existence between January 2, 1945, and March 1946 for the volume of monthly purchases by respective customers involved. Sales made below scale prices fall in two categories: (1) those where the customer purchased a portion of his monthly requirements from respondent and a portion from competitors and the prices granted him by respondent was based upon the customer's total purchases in accordance with the respondent's established scale of prices just as though the customer's entire monthly purchases had been made from respondent, and (2) those in which the customer purchased his total monthly requirements from respondent but was granted a price below that required by respondent's established price for his particular monthly volume of purchases. The majority of sales made by respondent at prices below its established scale of prices falls in the first category.

(b) Most of the 226 accounts to which sales were made at prices below those established by respondent's scale of prices involved transactions with small and medium-sized bakers in which sales were made by respondent's sales representatives in accordance with its instructions. It was this class of customer which was given the greatest advantage by respondent's price scales of January 2, 1945, and which had previously been purchasing bakers' yeast from respondent at prices in excess of those paid competitors. Respondent's sales representatives were in effect instructed to exercise their best efforts to sell at scale prices when possible and to deviate therefrom only where, and to the extent, they found it necessary to do so in order to protect respondent's business or get new business and to permit such price deviation only to the extent of meeting the low price of a competitor. The evidence of record discloses that these instructions were substantially carried out.

However, said instructions were initially deficient in two respects and therefore ineffective in preventing sales at prices which deviated from respondent's scale prices only to the extent of meeting equally low prices of competitors. Respondent failed to advise said representatives as to what low price of a competitor was to be met or to define said low price

and permitted them to consider the entire monthly requirements of a customer to be used as a basis for determining the price to be quoted and used in meeting the undefined low price of a competitor regardless of the monthly quantity actually purchased from respondent. The record discloses numerous instances in which respondent quoted and sold bakers' yeast not only at prices below its established scale prices but below the prices of competitors, particularly when the monthly volume purchased by the customer is taken into consideration and used as a basis for determining price. In such instances the low price of a competitor was for a monthly quantity of yeast far in excess of that sold said customer by the respondent. In other instances, where respondent was already supplying the total monthly requirements of a customer it reduced prices below its scale for such requirements. In these instances its representatives were advised by the buyer of unconfirmed price quotations of competitors, and in others neither respondent nor its representatives had any knowledge of the competitive price quotations or even the name of the alleged potential competitor.

(c) For more than nine years prior to January 2, 1945, respondent consistently sold bakers' yeast at prices higher than those of most of its competitors and yet retained more than 57% of the total volume of said yeast sold throughout the United States. A competitive situation or condition was thus established under which most competitors of respondent could normally expect to sell and did sell bakers' yeast at prices slightly below those of respondent. Also, buyers normally expected to purchase, and did purchase, said product from respondent at prices slightly in excess of those paid most of its competitors. Under these conditions it was unnecessary for respondent to meet or match exactly a lower price of a competitor in order to retain business or to get new business. By adoption of its price scales of January 2, 1945, respondent overturned the conditions of nine years' standing and initiated discriminatory prices in many instances lower than the prices of its competitors and thereby forced them to lower their prices to an extent which threatened their ability to survive. By thereafter selling below the prices thus established, in some instances, respondent in fact put into effect still larger price differentials resulting in still broader discriminations than those found to exist under said price scale. In view of the foregoing the Commission is of the opinion that the re-

We think that the argument advanced to justify this practice answers itself. An "equally low price of a competitor" means an equally low price for a given quantity.[8]

Clause (4) is modified. We affirm the order as thus modified. Enforcement of clause (2) is denied. We grant enforcement of clause (3) and of clause (4) as modified.

On Petitions for Rehearing

 Respondent's petition is denied. The Commission's petition is partly granted for the following reason: In Moss, Inc., v. Federal Trade Commission, 2 Cir., 148 F.2d 378, 379, we held that, under 15 U.S.C.A. § 13(b), when the Commission proves discrimination without more, it makes out a *prima facie* case, and that the respondent then has the burden of rebutting this *prima facie* case by showing justification. This ruling, together with its approval in Federal Trade Commission v. Morton Salt Co., 334 U.S. 37, 45, 68 S.Ct. 822, 92 L.Ed. 1196, leads us to believe that we erred in our original opinion in the instant case in requiring clause (4) of the order to be modified. Accordingly, we affirm the order without such modification, and grant enforcement thereof except Clause 2.

Gabriel Glantz, Detroit, Mich., on brief, for appellant.

Edward T. Kane, Vincent Fordell, Detroit, Mich., on brief, for appellee.

Before HICKS, Chief Judge, and ALLEN and MILLER, Circuit Judges.

---

spondent did not in good faith meet the equally low prices of competitors after January 1945 but abandoned its former policy of making higher prices than its

competitors for one of underselling them on a discriminatory basis."

8. We see nothing contrary to this conclusion in Standard Oil Co. v. F. T. C., 340 U.S. 231, 71 S.Ct. 240.