**STANDARD OIL COMPANY,**
Petitioner,

v.

**FEDERAL TRADE COMMISSION,**
Respondent.

No. 11409.

United States Court of Appeals
Seventh Circuit.

May 3, 1956.

Hammond E. Chaffetz, Chicago, Ill., Weymouth Kirkland, Howard Ellis, W. H. Van Oosterhout, Frederick M. Rowe, of Kirkland, Fleming, Green, Martin & Ellis, Chicago, Ill., Thomas E. Sunderland, Albert E. Green, Chicago, Ill., of counsel, for petitioner.

Robert B. Dawkins, Asst. Gen. Counsel, Federal Trade Commission, Washington, D. C., Earl W. Kintner, General Counsel, James E. Corkey, Washington, D. C., for respondent.

Otis H. Ellis, Washington, D. C., William Simon, Washington, D. C., Cyrus Austin, New York City, amici curiae.

Appell, Austin & Gay, New York City, for National Congress of Petroleum Retailers, Inc., and Retail Gasoline Dealers Ass'n of Michigan, Inc.

Before DUFFY, Chief Judge, and MAJOR and LINDLEY, Circuit Judges.

MAJOR, Circuit Judge.

This proceeding originated in a complaint filed by respondent against petitioner on November 29, 1940, charging a violation of Section 2 of the Clayton Act, as amended by the Robinson-Patman Act, 49 Stat. 1526, as amended 15 U.S.C.A. § 13. The case is now here on petition by Standard to review a modified order to cease and desist, issued by the Commission against Standard January 16, 1953. The proceeding has long been before the Commission and the courts, and a number of the original contested issues have been adjudicated. In fact, on the present review there are only two contested issues which, as stated by the Commission, are: (1) whether the Commission correctly concluded that petitioner failed to establish that its lower price was made in "good faith" to meet the equally low price of a competitor within the meaning of Section 2(b) of the Robinson-Patman Act, and (2) whether the revised order to cease and desist is warranted by the findings and properly issued. As subsequently shown, we conclude that the first issue must be decided adversely to the Commission, which renders the second issue of no consequence.

The Commission's original cease and desist order was before this court for review, wherein its enforcement, with some modification, was allowed with judgment accordingly. Standard Oil Co. v. Federal Trade Commission, 7 Cir., 173 F.2d 210. On appeal, the Supreme Court reversed, with instructions to this court to remand the case to the Commission to make findings in conformity with its opinion. Standard Oil Co. v. Federal Trade Commission, 340 U.S. 231, 71 S. Ct. 240, 95 L.Ed. 239. A history of the proceeding has previously been set forth in detail both by this and the Supreme Court and need not be repeated here except insofar as it relates to the question now for decision. Also, except for the same purpose, we need not be concerned with issues previously raised and decided by the Supreme Court.

Petitioner's sales of gasoline about which the "good faith" defense revolves were made to four customers, classified by petitioner as jobbers, namely, Ned's Auto Supply Company, Stikeman Oil Company, Citrin-Kolb Oil Company and Wayne Company. The Commission took the position originally that the "good faith" defense was not available to petitioner and, therefore, made no findings relative thereto. This court agreed with the Commissioner's position on that issue and affirmed. It was on this issue, however, that the Supreme Court reversed and remanded.

In response to the remandment the Commission from the original record made its modified findings, which conclude with the statement:

"For the reasons stated, the Commission is of the opinion that the respondent has not shown that the

discriminatory prices allowed [naming the four customers involved] were lower prices granted in good faith to meet equally low prices of competitors. The Commission, therefore, finds that the burden imposed upon the respondent by Section 2(b) of the Clayton Act, as amended by the Robinson-Patman Act, has not been sustained and that the price discriminations referred to in these findings have not been justified."[1]

Whether the decision of the Commission under the attending circumstances represents a finding of fact or a conclusion of law is of importance. We are of the view that it falls within the latter category, and this notwithstanding the statement in Federal Trade Commission v. A. E. Staley Manufacturing Co., 324 U. S. 746, 758, 65 S.Ct. 971, 976, 89 L.Ed. 1338:

"Congress has left to the Commission the determination of fact in each case whether the person, charged with making discriminatory prices, acted in good faith to meet a competitor's equally low prices. The determination of this fact from the evidence is for the Commission."

The Commission in its brief appears to recognize that its decision on this critical issue is a conclusion of law (for example, see Commission's statement of contested issues, supra). Certainly there is no dispute as to the evidentiary facts as found by the Examiner in the original proceeding. Referring thereto, the Commission in its brief states, "Here the facts as such are not in dispute, it is simply a matter of applying the law to the facts." Moreover, the Commission's decision on the "good faith" issue is the result of its process of reasoning, legal in nature, a portion of which, as we shall subsequently show, has been repudiated by the Supreme Court. Such being

the case, the weight to be attached to its decision is dependent upon the reasoning by which it is reached.

Prior to a discussion of the Commission's findings now under review, we think it pertinent to observe that petitioner's good faith has been either recognized or assumed at all levels during the course of this protracted proceeding. Certainly the Examiner so found. (See footnote 7, 340 U.S. at page 238, 71 S. Ct. at page 244 of the Supreme Court opinion.) The Commission in its original findings took no issue with its Examiner on this score, but concluded as a matter of law that the "good faith" defense was not available "in the face of affirmative proof that the effect of the discrimination was to injure, destroy and prevent competition with the retail stations operated by the said named dealers and with stations operated by their retailer-customers." In fact, there is good reason to think that the Commission at that time acquiesced in petitioner's contention that the sales in controversy were made in good faith. This court in reviewing that record, 173 F. 2d 210, 216, stated:

"The showing made here by the petitioner that it made the lower price in good faith to meet competition, we assume, as the Commission apparently did, was made out. The effect of it was to rebut the prima facie case made by the Commission's proof of the petitioner's discriminatory prices. If nothing further appeared in this record, the case might well have ended there."

This court also stated at page 213:

"There is substantial evidence in this record, and we think it may be assumed to be conclusive, to the effect that the petitioner made its low price to Ned's, Citrin, Wayne, and Stikeman in good faith to meet the lower price of a competitor."

---

1. Two Commissioners, based upon the findings of the Trial Examiner, dissented and expressed the view that the complaint against petitioner should be dismissed.

The Supreme Court stated 340 U.S. at page 238, 71 S.Ct. at page 244:

"Petitioner presented evidence tending to prove that its tank-car price was made to each 'jobber' in order to retain that 'jobber' as a customer and in good faith to meet a lawful and equally low price of a competitor."

After quoting from the findings of the Trial Examiner (footnote on same page), the same court on the following page, referring to the evidence, stated that it, "if accepted, would have established a complete defense to the charge of unlawful discrimination."

Moreover, in the findings now under review the Commission does not expressly repudiate the findings of the Examiner in the original proceeding that petitioner's reduction in price was granted to meet the equally low prices offered by competitors. The Commission, after a detailed discussion relative to the situation existing between petitioner and each of the four jobbers in controversy, states:

"It may well be that respondent was convinced that if it ceased granting tank-car prices to Citrin-Kolb, Wayne, and Stikeman and continued to refuse the tank-car price to Ned's Auto Supply Company it would lose these accounts. It had substantial reasons for believing this to be the case, for all of these concerns, except Ned's Auto Supply Company, had already been recognized as entitled to the tank-car price under the commonly accepted standards of the industry, and Ned's had achieved a volume of distribution which brought it within the range where it was likely to be so recognized by a major oil company at any time."

It thus appears evident even under this revised version of petitioner's situation that it was confronted with the problem of reducing its price to meet competitive offers or of forfeiting the business of the four jobbers.

An attempt to enter into a discussion of all of the ramifications contained in the Commission's reasoning and argument in support of its decision against the "good faith" defense would unduly prolong this opinion. We shall, therefore, limit our discussion to a few of the more salient points as contained in the modified findings. The Commission found:

"At all relevant times, respondent knew or had the means of knowing and should have known that the manner in which it priced and sold its gasoline continually created the probability of injury to competition between retail dealers who bought such gasoline at different prices and resold it in competition with one another."

This is the same theory upon which the Commission's previous order was bottomed and which was expressly repudiated by the Supreme Court, 340 U.S. at pages 249–250, 71 S.Ct. at pages 249–250.

The Commission found:

"It [petitioner] also knew or should have known that the price differences which it granted could not be justified on the basis of differences in the cost of manufacture, sale and delivery resulting from differing methods or quantities in which its gasoline was sold or delivered."

We think this statement is irrelevant to the instant issue. A cost justification defense is available under Section 2(a), but it is separate and distinct from the "good faith" defense provided in 2 (b). Both defenses were originally invoked by petitioner but the cost justification defense was abandoned, see footnote 2, Supreme Court opinion, 340 U. S. at page 234, 71 S.Ct. at page 242.

■ The Commission found that the Robinson-Patman amendment to the Clayton Act imposed upon petitioner "the duty and obligation of reviewing its pricing policy and taking such action as might be necessary to bring that policy

into conformity with the new statute." This reasoning also appears to have been dispelled by the Supreme Court, which discusses the changes produced by the amendment and concludes with the statement, "None of these changes, however, cut into the actual core of the defense." It would thus appear that a "good faith" defense available under the Clayton Act would still be available under the amended Act. If petitioner's pricing policy was lawful prior to the amendment the same policy was lawful afterward. Such being the case, the mere fact that it did not change its policy is of little, if any, consequence.

The sole contention of the Commission which has any semblance of merit, in fact the only contention which it is entitled to make in view of the Supreme Court decision, is that petitioner adhered to a pricing system in reducing its prices to the four jobbers and that as a result the "good faith" defense cannot prevail. We suspect, as petitioner asserts, that this contention was an afterthought on the part of the Commission, advanced in an attempt to bring the case within the rule of such cases as Federal Trade Commission v. A. E. Staley Manufacturing Co., 324 U.S. 746, 65 S.Ct. 971, 89 L.Ed. 1338; Corn Products Refining Co. v. Federal Trade Commission, 324 U.S. 726, 65 S.Ct. 961, 89 L.Ed. 1320; and Federal Trade Commission v. Cement Institute, 333 U.S. 683, 68 S.Ct. 793, 92 L. Ed. 1010. Apropos to this contention the Commission found that with one exception "all of the discriminations in price involved in this proceeding were made pursuant to respondent's established method of pricing. They were not the result of departures from a non-discriminatory price scale which were made to meet lower prices of competitors, but represented only the continued application of the pricing standard previously adopted by respondent and followed by it since long before 1936."

We are not persuaded as to the accuracy of the statement contained in this quotation. The Commission, after finding that petitioner had a "method" of pricing, proceeds in its brief to a "policy" and from that to a "system." In its brief it states that petitioner had a "pricing system," irrespective of the words used to describe it. Obviously this characterization by the Commission is designed to bring the case within the scope of the system condemned by the Supreme Court in Staley and kindred cases. This effort must fail. The system described and condemned in Corn Products, later in Staley, and still later in Cement, bears not the slightest resemblance to the pricing system which the Commission purports to detect in the instant situation. The basing point system under scrutiny in those cases was labeled by the Supreme Court as unlawful and was employed by many and in some instances all members of the same industry. The system involved freight absorption and the collection of phantom freight. The system was utilized to stabilize or increase but never to lower prices. The system as pointed out in the Cement case eliminated all price competition and resulted in the sale of the product by all dealers at any given point at identical prices and terms. The gist of the reasoning of the Supreme Court in those cases was that the pricing system being illegal all prices determined thereby were illegal. It follows, according to such reasoning, that the meeting by the seller of a competitor's unlawful price precludes the seller from reliance upon a "good faith" defense.

It is interesting and highly significant that the statute employs the language, "made in good faith to meet an equally low price of a competitor," but that the Supreme Court in the instant case adds the word "lawful," so that it reads, "made in good faith to meet a lawful and equally low price of a competitor", 340 U.S. at pages 238 and 246, 71 S.Ct. at pages 244 and 248. We do not know, of course, why the Supreme Court added the word "lawful," but we strongly suspect that it was for the purpose of giving emphasis to its previous

decisions that a "good faith" defense was not available to a seller who had met an unlawful price. In this connection, it is also pertinent to note that in the instant situation there is no finding, no contention and not even a suspicion but that the competing prices which petitioner met were lawful. Moreover, we are unable to discern any basis for the conclusion that petitioner's prices "were not the result of departures from a non-discriminatory price scale." The record affirmatively demonstrates to the contrary. Petitioner sold invariably at its uniform tank-wagon price, except when at different times it reduced its price to meet competitive offers in order to retain a customer. Petitioner had 362 Detroit customers, only four of which purchased at prices reduced from its uniform tank-wagon price.

The bargaining and haggling which took place between petitioner and the four involved "wholesalers" prior to a reduction in prices to them is hardly consistent with the Commission's theory that prices were reduced pursuant to a system. For instance, petitioner over many years refused to give Ned's, its "most valuable tank-wagon customer," any reduction at all despite persistent demands based upon competitive offers. Its reluctant grant of a ½¢ reduction in 1936, increased to 1½¢ in 1938 in response to an "ultimatum" by Ned's, would appear to dispel completely any idea that such reduction in price was systematic, as urged by the Commission. The Commission appears to discern something sinister in the fact that a reseller might obtain the tank car price only if it maintained a bulk plant with facilities for accepting delivery of gasoline in tank car quantities; had a business in excess of one million gallons of gasoline annually; had distribution equipment and adequate credit standing. Relative to making a reduced price to a large customer, the Supreme Court in this case stated 340 U.S. at page 249, 71 S.Ct. at page 249:

"For example, if a large customer requests his seller to meet a tempt-ingly lower price offered to him by one of his seller's competitors, the seller may well find it essential, as a matter of business survival, to meet that price rather than to lose the customer."

■■ We think that a seller must be permitted in the exercise of a sound judgment to determine when and under what circumstances it will reduce its price in order to meet that of a competitor, and a right to require that a purchaser be possessed of the facilities for storing, handling and distributing the product. The law did not require petitioner to reduce prices in any instance, it only authorized it to do so under the limitation imposed. Petitioner had the same right to reduce its price in order to retain a customer as it did to refuse to reduce with the risk of losing a customer. The "good faith" defense would be meaningless if the seller was required, as the Commission appears to indicate, to reduce its price alike to all customers regardless of the quantity in which they buy, their facilities for handling the product and their ability to pay.

Finally, the Commission finds that the "good faith" defense is not available to petitioner because its "competitors, including the three against whom similar charges of price discriminations are pending, might also defend their similar price differences on the ground of meeting respondent's equally low prices or the equally low prices of other competitors. The Commission does not construe the words 'in good faith' in Section 2 (b) as permitting that result." We are not able to discern any logic in such reasoning. Evidently from the quoted statement the Commission does not know whether three of petitioner's competitors, against whom are pending charges of price discrimination, will invoke the "good faith" defense. If they should, it will be time enough to cross that bridge when it is reached. Moreover, we know of no reason why a competitor of petitioner should not have the right to meet petitioner's price or that of any other

competitor providing, of course, it did so in good faith. It is strange reasoning that one seller should be deprived of the defense provided in 2(b) because some other seller might also invoke its protection.

In our judgment and we so hold, petitioner's "good faith" defense was firmly established, and the Commission's reasoning by which it reached a contrary conclusion is untenable and must be rejected. A decree will be entered vacating and setting aside its findings, conclusions and order issued January 16, 1953.