**FEDERAL TRADE COMMISSION,**
Petitioner,

v.

**WASHINGTON FISH & OYSTER COM-
PANY, Inc., a corporation,**
Respondent.

**No. 16541.**

United States Court of Appeals
Ninth Circuit.

Oct. 12, 1959.

Alan B. Hobbes, Asst. General Counsel, John W. Carter, Jr., Miles J. Brown, Attorneys, Federal Trade Commission, Washington, D. C., for petitioner.

Martin P. Detels, Jr., W. Bryan Lane, W. T. Beeks, Evans, McLaren, Lane, Powell & Beeks, Seattle, Wash., for respondent.

Before BONE and HAMLEY, Circuit Judges, and BOWEN, District Judge.

HAMLEY, Circuit Judge.

The Federal Trade Commission has applied to this court for enforcement of a cease and desist order entered under section 2(c) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C.A. § 13(c). The cease and desist order, issued on March 25, 1946, directed Washington Fish & Oyster Company, Inc., to cease and desist from

> "* * * paying or granting, directly or indirectly, to any buyer anything of value as a commission or brokerage, or any compensation, allowance, or discount in lieu thereof, upon purchases made for such buyer's own account."

On June 7, 1957, the Commission undertook a formal investigation to determine whether the cease and desist order was being obeyed. As a result the Commission on February 18, 1959, filed a report in which it was found and concluded

that Washington Fish & Oyster had violated the cease and desist order. On July 21, 1959, the Commission filed an application in this court for enforcement of that order. This was done pursuant to section 11 of the Clayton Act, 15 U.S.C.A. § 21.[1]

Paragraphs VIII to XII of this application pertain to the formal investigation which was instituted by the Commission on June 7, 1957, to determine whether the company had violated the cease and desist order. Items 6 to 11 of the Commission's designation of record in this enforcement proceeding relate to the orders and reports of the Commission or its examiner or to testimony and exhibits having to do with the investigation begun on June 7, 1957.

The company has now moved to strike these paragraphs of the application and items of the designation of record. The company has also moved, in the alternative, that in the event the motions to strike are denied, an order be entered directing the Commission to take additional evidence to be adduced by the company.

### Motions to Strike

The company contends that the Commission was without statutory authority to conduct its formal investigation to determine whether the cease and desist order was being obeyed, and that all proceedings and reports issued thereunder are therefore illegal and void.

■ It is true, as the Commission concedes, that the Clayton Act, as amended, does not specifically direct the Commission to conduct investigations to determine whether cease and desist orders are being violated. The act provides, however, that the Commission may apply to the United States Court of Appeals for enforcement "if such person fails or neglects to obey" a cease and desist order.[2] Congress must therefore have expected the Commission to determine the fact of violation before applying to a United States court of appeals for enforcement.

The method or procedure to be followed by the Commission in determining the fact of violation is not spelled out in the statute. Hence, any reasonable and fair method or procedure not forbidden by statute would be appropriate. Under section 6 of the Federal Trade Commission Act, 15 U.S.C.A. § 46, the Commission is given broad powers of investigation. Pursuant to this authority, the Commission has promulgated rules under which investigational hearings may be conducted for the purpose of determining whether a respondent is complying with an order of the Commission.[3]

■ In the formal investigation as to violations of the cease and desist order of March 25, 1946, there has been compliance with all requirements of statute and rule concerning procedure. The company had full and ample opportunity to cross-examine all witnesses and examine all documents, and availed itself of that opportunity. It had full and ample opportunity to contest the issue of violation of the order by introducing evidence, but did not avail itself of that opportunity. There is no contention that the record of that investigation, as designated by the Commission, is incomplete or inaccurate in any respect.

---

1. As amended August 28, 1958, Pub.L. 85–791, § 4, 85th Cong., 2d Sess., 72 Stat. 943. This provision of the Clayton Act was again amended in 1959, Pub.L. 86–107, 86th Cong., 1st Sess., 73 Stat. 243, U.S.Code Congressional and Administrative News, 86th Cong., 1st Sess., 1959, pages 1950–1954. The 1959 enactment, however, has no application to any proceeding initiated before July 23, 1959—the date of enactment of the 1959 act.

Section 2 of Pub.L. 86–107. All references in this opinion to the Clayton Act refer to the form of the act prior to the 1959 amendment.

2. Third paragraph of section 11, 15 U.S. C.A. § 21.

3. Procedures and Rules of Practice for the Federal Trade Commission, 16 C.F.R., subpart D, § 1.34, 15 U.S.C.A. following section 45.

We hold that by virtue of the statutes cited the Commission had authority to conduct the questioned formal investigation as to violations of the cease and desist order of March 25, 1946.

The company further argues, however, that if the Commission had authority to conduct such an investigation there is nevertheless a total absence of statutory authority for the filing of the report therein, or record thereof, in this enforcement proceeding.

The statute authorizing the Commission to institute enforcement proceedings before United States courts of appeals provides that the Commission "shall file the record in the proceeding, as provided in section 2112 of title 28, United States Code. * * * "[4] Paragraph (b) of the latter section, 28 U.S.C.A. § 2112(b), provides that the record to be filed in the court of appeals in such a proceeding shall consist of the agency order sought to be reviewed or enforced, the findings or report upon which it is based, "and the pleadings, evidence, and proceedings before the agency. * * * "[5]

The question presented, therefore, is whether the record in connection with the Commission's investigation of violations of the instant cease and desist order constitutes "pleadings, evidence, and proceedings before the agency" which may be filed with the court for consideration in the enforcement proceeding pursuant to section 2112(b).

As before indicated, the Commission must determine to its own satisfaction that there has been a violation of a cease and desist order before it may apply to a United States court of appeals for enforcement. Where this determination is made as a result of an ex parte informal investigation, there are no "pleadings, evidence, and proceedings," within the meaning of the statute. In this event the court, if it affirms the cease and desist order and if the assertion of violation is disputed, must remand the matter to the Commission for formal proceedings on the question of whether the order has been violated. Indeed, this is the usual practice.[6]

As we have held herein, however, the Commission may make this determination as to the fact of violation by means of a formal investigation preceding application to a court for enforcement. Such an investigation pertains to an issue which must be decided before an enforcement order can be effectuated. Federal Trade Commission v. Ruberoid Co., 343 U.S. 470, 478, 72 S.Ct. 800, 96 L.Ed. 1081. An issue which must be decided before an enforcement order can be effectuated is appropriate to be considered in deciding whether such an order should be entered by the court. The record of that investigation therefore constitutes "pleadings, evidence, and proceedings before the agency," within the meaning of section 2112(b).

It follows that the entire record of that investigation may be filed for our consideration in this enforcement proceeding.[7]

4. First sentence of third paragraph of section 11 of Clayton Act, as amended on August 28, 1958, 15 U.S.C.A. § 21.

5. Section 2112 was enacted in 1958 for the purpose of permitting administrative appeals to be heard on abbreviated records where feasible. Senate Report 2129, 85th Cong., 2d Sess., U.S.Code Congressional and Administrative News, 1958, page 3996.

6. Federal Trade Commission v. Whitney & Co., 9 Cir., 192 F.2d 746; Federal Trade Commission v. Herzog, 2 Cir., 150 F.2d 450; Federal Trade Commission v. Baltimore Paint & Color Works, Inc., 4 Cir., 41 F.2d 474.

7. See the last sentence of 28 U.S.C.A. § 2112(b). The same result was reached in Federal Trade Commission v. Standard Brands, Inc., 2 Cir., 189 F.2d 510, but on somewhat different reasoning. The court there said (189 F.2d at page 512):
"True, it has been customary for a court, upon affirming such an order, to appoint a master to make an inquiry as to violation, and, usually, to name the Commission as master. But there is no

### Motion to Adduce Additional Evidence

The company has also moved, in the alternative, that in the event the motions to strike are denied, an order be entered directing the Commission to take additional testimony to be adduced by the company.

■ This court may not order the Commission to adduce additional evidence in an enforcement proceeding unless it is shown to the satisfaction of the court that such additional evidence is material. Third paragraph of section 11 of the Clayton Act, as amended, 15 U.S.C.A. § 21.

■ The additional testimony which the company desires to adduce would tend to establish what the company regards as a defense to a charge of violation of section 2(e) of the Clayton Act, 15 U.S. C.A. § 13(c). Specifically, the additional evidence, it is asserted, would show that any difference between the prices charged by the company with respect to sales to direct purchasers and sales to customers purchasing through brokers was the result of the economic necessity to the company of meeting the competitive prices of other packers and brokers.

The company relies upon Henry Broch & Co. v. Federal Trade Commission, 7 Cir., 261 F.2d 725, as establishing that the necessity of meeting competition affords a defense to a charge of violation of section 2(c) of the Clayton Act.[8] If such a defense is available, the evidence tending to establish it is material, and the company should be permitted to adduce it.

The cease and desist order involved in Broch was not directed against a seller or buyer but against brokers representing a seller. The Commission found that the brokers had violated section 2(c) by granting and allowing a portion of their normal and customary brokerage fee to a particular buyer in connection with that buyer's purchase of food products from the seller. The court set aside this order, holding a seller's broker is not covered by section 2(c). Since our case involves a seller rather than a seller's broker, we need not decide whether we would agree with this ruling in Broch.[9]

In its decision in Broch, however, the court went on to make some general observations concerning the desirability of permitting sellers to meet competition by reducing items in the cost of distribution, including brokerage commissions.[10]

reason why, now that we have affirmed the order, we may not, in the exercise of our discretion, treat the Commission's findings as if the Commission had been appointed our master, since, in the Commission hearings, respondent was accorded all its procedural privileges. (If, in future cases, a respondent, believing the Commission's order invalid, wishes to avoid what it may consider the needless expense of such a hearing if the order is invalid, such a respondent can promptly test the order's validity by a petition to review the order.)"

8. Broch was decided after the instant Commission hearings. The company points to this circumstance as explaining why the defense now asserted was not advanced during the Commission proceedings. Prior to Broch, the company concedes, "the necessity of meeting competition had not been held to constitute a defense to a charge of violation of Section 2(c) of the Clayton Act * * *."

9. Certiorari was granted in Broch on June 15, 1959. Federal Trade Commission v. Henry Broch & Co., 360 U.S. 908, 79 S. Ct. 1297, 3 L.Ed.2d 1259.

10. In this connection the court said [261 F.2d 729]:
"Obviously an important element in the cost of food distribution is the commission paid by sellers to their brokers. If a seller is to be forbidden to meet competition by reducing an item in its cost of distribution, then to that extent his costs are frozen without regard for the welfare of the public which must ultimately defray the resultant costs of distribution. Trade restraints in the distribution of groceries surely do not occupy a preferred antitrust position, as distinguished from comparable situations. Standard Oil Co. v. Federal Trade Commission, 1951, 340 U.S. 231, 248-250, 71 S.Ct. 240, 95 L.Ed. 239; 7 Cir., 1956, 233 F.2d 649, affirmed 1958, 355 U.S. 396, 78 S.Ct. 369, 2 L.Ed.2d 359."

It is this language which Washington Fish & Oyster relies upon as establishing that the necessity of meeting competition affords a defense to a charge under section 2(c).

These observations by the court in Broch indicate that it regarded that case as one in which a seller reduced the fee to be paid to his broker for bona fide brokerage services in order to quote a competitive over-all price to a buyer. Whether this was really the case, and if so whether the seller could so proceed without violating section 2(c), we need not decide.[11] Our case involves no such circumstance, the purported brokerage fee here having been paid to the buyer.

Subsections (c), (d), and (e) of section 2 of the Clayton Act, as amended, unqualifiedly make unlawful certain business practices other than price discriminations. The only escape Congress has provided for violations under these subsections is that which is sanctioned in subsection (b) of that section. Federal Trade Commission v. Simplicity Pattern Co., Inc., 360 U.S. 55, 79 S.Ct. 1005, 3 L.Ed.2d 1079.

Subsection (b) provides that nothing contained in section 2 and other specified sections "shall prevent a seller rebutting the prima-facie case thus made by showing that his lower price or the furnishing of services or facilities to any purchaser or purchasers was made in good faith to meet an equally low price of a competitor, or the services or facilities furnished by a competitor."

Washington Fish & Oyster was not charged with any violation connected with the furnishing of services or facilities (subsection (d) and (e) of section 2). Nor was it charged with quoting and collecting a discriminatory price contrary to subsection (a). What it was charged with was the paying of a brokerage fee to a buyer, no brokerage services being rendered.

The defense based on competition, set out in subsection (b), is inapplicable to section 2(c) violations, since such violations are not primarily concerned with prices, services, or facilities. The fact that the granting of a purported brokerage fee to a buyer may in a particular case result in discriminatory prices is immaterial. The gist of the violation under section 2(c) is not that discriminatory prices have been charged, but that the parties have engaged in a practice designed to deceive others as to the price charged and paid, whether or not discriminatory.

Since the necessities of competition do not constitute an available defense under section 2(c), the evidence concerning competition which the company seeks to adduce is not material.

The motions to strike and the motion, in the alternative, for leave to adduce additional evidence are denied.

view of that court's holding that section 2(c) does not apply to a seller's broker.

---

11. Nor need we concern ourselves with whether such an observation in the Broch decision is to be regarded as dictum in