**FEDERAL TRADE COMMISSION,**
Petitioner,

v.

**WASHINGTON FISH & OYSTER COMPANY, Inc., Respondent.**

**No. 16541.**

United States Court of Appeals
Ninth Circuit.

July 22, 1960.

Alan B. Hobbes, Asst. Gen. Counsel, Daniel J. McCauley, Jr., John W. Carter, Jr., Miles J. Brown, Attys., Washington, D. C., for Federal Trade Commission.

Evans, McLaren, Lane, Powell & Beeks, W. Byron Lane, Martin P. Detels, Jr., Seattle, Wash., for respondent.

Before BONE, HAMLEY and HAMLIN, Circuit Judges.

HAMLEY, Circuit Judge.

The Federal Trade Commision seeks a decree of this court affirming and enforcing a cease and desist order which the commission entered against Washington Fish & Oyster Company, Inc.[1] The company does not object to the entry of a decree affirming the cease and desist order. It does, however, assert that it has not violated that order and for this reason resists entry of a decree of enforcement.

The company is a Washington corporation which has its principal place of business in Seattle. It has been and now is engaged in the business of packing, selling and distributing fresh, frozen, salted, smoked and canned salmon and other seafood products. In the course of its business the company causes its food products to be shipped in interstate commerce.

In a proceeding instituted before the commission in 1944 the company was charged with violating section 2(c) of the Clayton Act as amended by the Robinson-Patman Act.[2] This led to the entry of a commission order on March 25, 1946, directing the company to cease and desist from

"* * * paying or granting, directly or indirectly, to any buyer anything of value as a commission or brokerage, or any compensation, allowance, or discount in lieu thereof, upon purchases made for such buyer's own account."

On June 7, 1957, the commission undertook a formal investigation to determine whether the cease and desist order was being obeyed. A hearing was held in which the company participated. On February 18, 1959, the commission filed a report in which it was found and concluded that the company had violated the cease and desist order in three particulars.

On July 21, 1959, the commission filed in this court the instant application for a decree affirming and enforcing the cease and desist order. The prayer therein for a decree of enforcement is predicated upon the commission's finding in its February 18, 1959, report that the company had violated the cease and desist order.

The company moved in this court to strike certain paragraphs of the application and certain items of the designation of record. We denied these motions. Federal Trade Commission v. Washington Fish & Oyster Company, 9 Cir., 271 F.2d 39. The company then filed its answer to the commission's application. The position therein taken is that the commission's finding that the cease and desist order had been violated is not supported by substantial evidence and that in any event the company has a defense under section 2(b) of the act as amended.[3]

---

1. The proceeding is authorized by § 11 of the Clayton Act, 15 U.S.C.A. § 21, as that section existed prior to its amendment in 1959.

2. Section 2(c) as amended, 15 U.S.C.A. § 13(c) reads as follows:
   "It shall be unlawful for any person engaged in commerce, in the course of such commerce, to pay or grant, or to receive or accept, anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or pur-

chase of goods, wares, or merchandise, either to the other party to such transaction or to an agent, representative, or other intermediary therein where such intermediary is acting in fact for or in behalf, or is subject to the direct or indirect control, of any party to such transaction other than the person by whom such compensation is so granted or paid."

3. Section 2(b) as amended, 15 U.S.C.A. § 13(b), reads as follows:
   "Upon proof being made, at any hearing on a complaint under this section,

■ We will consider first the question of whether there is substantial evidence to support the commission's finding that the company had disobeyed the cease and desist order. As before noted, this finding makes reference to three distinct sets of circumstances.

The first of these relates to a so-called promotional allowance. Approximately seventy-five per cent of all the company's sales of canned salmon are made through brokers. With one exception the fee which the company paid to its brokers was five per cent. In this exceptional instance the company paid its broker, International Brokerage Company, a commission of two per cent on sales made through that broker to Pacific Fruit & Produce Company and Gamble-Robinson Company. On these same transactions the purchasers, Pacific Fruit & Produce and Gamble-Robinson, were given a three-per-cent deduction from the price listed on the invoices. These deductions were there designated as "promotion" allowances.

■ Subject to certain exceptions, section 2(c) of that act among other things makes it unlawful for a seller to give a purchaser any price allowance or discount in lieu of a commission, brokerage, or other compensation. Excepted from this prohibition are allowances or discounts given in lieu of compensation for services rendered in connection with such sale and purchase.[4] It follows that if a purchaser performs services of a promotional nature for the seller a price allowance or discount to compensate for the reasonable value of such services would come within the exception of section 2(c) and would not be unlawful. Likewise, it would not evidence disobedience of a cease and desist order designed to enforce the mandate of that section.

■ But since the circumstance which prevents such allowance or discount from being unlawful under section 2(c) is stated as an exception to the general provisions of that section, the burden of proving that the exception applies is upon the one who so contends. Federal Trade Commission v. Morton Salt Co., 334 U.S. 37, 44, 68 S.Ct. 822, 92 L.Ed. 1196. Hence, Washington Fish & Oyster had the burden of proving that the three-per-cent allowance which it gave the two purchasers named above constituted reasonable compensation for promotional service which the purchasers rendered to the seller in connection with those transactions.

The items of evidence relied upon by the company as sustaining this burden are the notations on the invoices and testimony concerning the volume and character of the sales in question. As before indicated, the invoice notations explained the three-per-cent price deductions as "promotional" allowances. Concerning the volume and character of the sales, the evidence indicates that such sales involved a large volume of King crab and Puget Sound Sockeye salmon handled by International Brokerage Company as a single source. Over a six-month period 10,054 cases of salmon were sold in this manner. Puget Sound Sockeye, as the record shows, is not one of the five principal varieties of salmon.

that there has been discrimination in price or services or facilities furnished, the burden of rebutting the prima-facie case thus made by showing justification shall be upon the person charged with a violation of this section, and unless justification shall be affirmatively shown, the Commission is authorized to issue an order terminating the discrimination: *Provided, however,* That nothing herein contained shall prevent a seller rebutting the prima-facie case thus made by showing that his lower price or the furnishing of services or facilities to any purchaser or purchasers was made in good faith to meet an equally low price of a competitor, or the services or facilities furnished by a competitor."

4. This exception, however, does not include services of a kind which a buyer normally performs for himself, such as warehousing and reselling, Southgate Brokerage Co. v. Federal Trade Commission, 4 Cir., 150 F.2d 607, or which are of a merely incidental nature. Great Atlantic & Pacific Tea Co. v. Federal Trade Commission, 3 Cir., 106 F.2d 667.

Where a price allowance or discount has been made to compensate the purchaser for promotional services actually rendered, one would expect the seller to make a notation to that effect on the invoice. Hence, in the absence of such a notation it would be difficult for the seller to prove that this was the purpose of the allowance. It does not follow, however, that the presence of such a notation proves the bona fides of such an allowance. The weakness of such evidence lies in the fact that it is unavoidably self-serving.

The volume and more or less specialized character of the commodity sold tends to indicate that there was a field for promotional activity. It does not, however, tend to show that promotional services were actually rendered by the purchasers over and above that which they usually rendered on their own account. Nor does it tend to show that the reasonable value to the seller of any such promotional services was three per cent of the regular sales price of the commodity.

In addition to the inherent frailty of these items of evidence, as described above, there is here the further circumstance concerning the reduction in the regular brokerage fee. These three-per-cent allowances to the purchasers were exactly offset by a reduction in the fee to the seller's broker from the normal five per cent to a fee of two per cent. There is only one way that this coincidence can be explained in a manner which comports with section 2(c) and the cease and desist order. That is to show not only that the purchasers rendered promotional service of a value consistent with the three-per-cent allowance, but that this was a service which the broker usually performed as a part of the

service for which a five-per-cent fee was normally paid.

Under the circumstances the company, charged with the burden of proof, was called upon to present further evidence or risk an adverse finding. Only the company was in a position to describe the nature of the promotional services rendered by the purchasers, establish the reasonable value of such services to the company, and demonstrate that these were services which the broker ordinarily rendered.

The company chose not to produce evidence bearing upon these matters. It was content to rest on evidence which the commission could reasonably find was inadequate to maintain the company's burden of proof. Moreover, under familiar principles governing the function of fact finding, the commission could find significance adverse to the company's position in its failure to come forward with explanatory evidence. See Mammoth Oil Co. v. United States, 275 U.S. 13, 51, 48 S.Ct. 1, 72 L.Ed. 137.

We conclude that the finding of the commission in effect that the transaction under discussion evidences the granting of an allowance to purchasers in lieu of a commission, brokerage, or other compensation, of a kind forbidden by the cease and desist order, is supported by substantial evidence.

The other two sets of circumstances concerning which the commission made similar findings have to do with the so-called Ivar Wendt transaction and the inferences to be drawn from a tabulation of invoices covering a six-month period in 1956. We have examined the record with respect to these findings and conclude that such findings are supported by substantial evidence.[5]

5. Having discussed in detail and having sustained the finding as to the so-called promotional allowances, we believe it to be unnecessary to incorporate an analysis of the other two factual situations in this opinion. Such a finding as to any one transaction, if sustained, is sufficient to warrant issuance of a decree of enforcement. Moreover, a decree of enforcement, if entered, will look to the future and will not penalize the company for its past acts.

In addition to questioning the commission findings the company contends that whether or not those findings are sustained the company has a defense under section 2(b) of the act which precludes the entry of a decree of enforcement. Section 2(b), which is quoted in footnote 3, contains a proviso which permits a seller to rebut a prima facie case of discrimination in prices, services or facilities by showing that his lower price or the furnishing of services or facilities "was made in good faith to meet an equally low price of a competitor, or the services or facilities furnished by a competitor."

The company argues that if given an opportunity in a remanded proceeding before the commission it could adduce evidence which would establish the defense assertedly afforded to it by section 2(b). Specifically, it is represented, the company would be able to show that any difference between the prices charged by the company with respect to sales to direct purchasers and sales to customers purchasing through brokers was the result of the economic necessity to the company of meeting the competitive prices of other packers and brokers.

This identical argument was presented in this court in connection with the company's motion to remand, which was made and disposed of prior to the filing of the company's answer herein. In denying that motion we held that a defense based on competition, as provided for in section 2(b), is inapplicable to section 2(c) violations. Federal Trade Commission v. Washington Fish & Oyster Company, 9 Cir., 271 F.2d 39. While the company requests us to re-examine this question, we decline to do so.

A decree affirming and enforcing the cease and desist order of March 25, 1946, will be entered. The commission is directed to serve and file a proposed form of decree.