**WEBB–CRAWFORD CO. et al. v. FEDERAL TRADE COMMISSION.**

**No. 8969.**

Circuit Court of Appeals, Fifth Circuit.
Jan. 30, 1940.

Rehearing Denied Feb. 23, 1940.

---

[5] Bethke v. Grayburg Oil Co., 5 Cir., 89 F.2d 536, 539; Hatch v. Morosco Holding Co., 2 Cir., 19 F.2d 766, 768.

Max Michael, of Athens, Ga., and Edgar Watkins, of Atlanta, Ga., for petitioners.

W. T. Kelley, Chief Counsel, Federal Trade Commission, and John Darsey, Sp. Atty., Federal Trade Commission, both of Washington, D. C., for respondent.

Before FOSTER, SIBLEY, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

The Webb-Crawford Company, a corporation, and Ed D. Wier, E. L. Wier, and Carter W. Daniel, who trade under the name Daniel Brokerage Company, bring under review, 15 U.S.C.A. § 21, 28 U.S.C.A. § 225, an order of the Federal Trade Commission which commanded that "The Webb-Crawford Co., its officers, representatives, agents and employes, and Ed D. Wier, E. L. Wier, and Carter W. Daniel, either in their capacities as partners in Daniel Brokerage Company or in their individual capacities, in connection with the purchase of commodities in interstate commerce by The Webb-Crawford Company, do forthwith cease and desist from accepting or receiving from sellers any fees or commissions or brokerage or any allowance in lieu thereof." The Commission by cross petition asks us to command obedience to the order.

There are contentions that some of the findings of fact are unsupported by evidence and other facts are not found which the evidence proves. It is also urged against the order that there is no finding that the condemned practice had an injurious effect upon competition, or that this proceeding would be in the interest of the public as required by statute; and that the complaint does not make the issues adjudged. Lastly, it is urged that the order, resting on subsection (c) of Section 2 of the Clayton Act as amended by the Act of June 19, 1936, 49 Stats. 1526, 15 U.S.C.A. § 13, denies due process of law as here interpreted and applied.

The complaint in its last paragraph alleges that payment by sellers to and acceptance by Ed D. Wier, E. L. Wier, and Carter W. Daniel of fees and commissions is in violation of Sect. 2, subsection (c) of the statute, they being the majority stockholders, the officers and directors of the buyer, The Webb-Crawford Company. The cease and desist order is supported by and substantially pursuant to the complaint.

The complaint rests squarely on subsection (c) of Section (2) of the Clayton Act, and the authority to enforce it granted to the Commission in Sect. 11, 15 U.S.C.A. §§ 13(c), 21. Section 5 of the Federal Trade Commission Act, 15 U.S. C.A. § 45, relates to orders against unfair methods of competition, and as to those a finding that proceedings would be in the public interest is made an element. That Section is inapplicable here. While subsection (a) of Section 2 of the Clayton Act as amended, 15 U.S.C.A. § 13(a), makes necessary a finding that the discrimination therein condemned affects competition or tends to create monopoly, subsection (c) mentions no such element. Subsection (a) begins: "It shall be unlawful for any person engaged in commerce, in the course of such commerce", to do certain things. Subsection (c) begins with the same words, thus taking a fresh start and by an entirely independent paragraph and without any such qualification condemns other things. The Congress considered the effect on commerce of the things named in subsection (c), and absolutely prohibited them. The Trade Commission is not to enter on any enquiry about their evil effect, nor whether a proceeding would be in the public interest. Its duty is to enforce the prohibition.

We need not consider in detail the attacks upon the findings of fact. It is wholly undisputed that Ed D. Wier, E. L. Wier, and Carter W. Daniel are partners in the brokerage company, and that they own ninety-five percent of the stock of The Webb-Crawford Company, the first named being the corporation's president and salesman, the second its vice-president and its buyer, and the third its secretary and treasurer and financial manager. They constitute its Board of Directors and completely control it. The brokerage partnership is managed by C. R. Daniel, a brother of Carter W. Daniel and a small stockholder in The Webb-Crawford Company. He has his brokerage office in the warehouse of that Com-

pany, paying rent for it. The brokerage partnership represents only sellers and is paid only by them. It has many other customers beside The Webb-Crawford Company, and The Webb-Crawford Company buys not over ten percent of its goods through the partnership. It seems to us that the Board was not justified in finding that the partnership was controlled by The Webb-Crawford Company, but that the reverse is true, that the partners could and did control the corporation. It is not the case of a dummy broker really acting for the buyer. The Webb-Crawford Company did not get the brokerage fees or any of them. That it borrowed money from some of the partners is not the same thing. Nor do we see that the brokers failed to render selling service to the sellers. Their connection with the large business of The Webb-Crawford Company, which naturally would secure obtaining its orders, other things being equal, would tend to make sellers employ them as their brokers, but there is no evidence that the relationship was abused to the injury of either seller or buyer. What in our opinion is fatally important is that one of the brokers, E. L. Wier, as vice-president of The Webb-Crawford Company, does all its buying. He acts as the representative of the buyer; and as one of the brokers receives one-fourth of the commission paid by the seller. Ed D. Wier, who sells the purchased goods for The Webb-Crawford Company, and must have a voice in determining what shall be bought, gets a fourth of the commission; and Carter W. Daniel, who checks the bills and pays them, gets the remainder of the commission. Without reflecting on the faithfulness or honesty of anyone here concerned, it is evident that the tendency and general results are precisely the same as if The Webb-Crawford Company, the buyer, had gotten the commissions. And the law equally condemns both things. Omitting the inapplicable alternatives, we quote from subsection (c): "It shall be unlawful for any person * * * to pay or grant, or to receive or accept, anything of value as a commission * * * in connection with the sale or purchase of goods * * *, either *to the other party* to such transaction [The Webb-Crawford Co.,] *or to an agent, [or] representative,* [E. L. Wier, Ed D. Wier, Carter W. Daniel] * * * of any party to such transaction other than the person by whom such compensation is so granted or paid." Sellers who sell to The Webb-Crawford Com-

pany cannot pay brokers' commissions to these men who in fact act for and represent the buyer in making the purchases. The interposition of C. R. Daniel as manager for the brokers does not change the fact that the commissions are paid to his principals who are the officers and representatives of the buyer.

■ ■ Subsection (c) contains the words "except for services rendered". Do they qualify the whole subsection, so that any person having any relations whatever to the opposite party to a commercial sale can take a commission, provided he renders service? Such a construction would largely destroy the statute, and nullify its plain intent. The words can, by transferring a comma, be attached to those immediately preceding: "or any allowance or discount in lieu thereof, except for services rendered." The statute would then prohibit "a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof except for services rendered, in connection with the sale or purchase, etc." The punctuation as published is confusing. We think the true meaning is better indicated by taking the comma out after "thereof", and inserting it after "rendered". Commas are not to be suffered to defeat the legislative meaning.

■ ■ The statute is not unconstitutional as depriving these stockholders, without due process, of their right to engage in business activities merely because they are stockholders in a corporation. They may do all the brokerage business they can which has not been made unlawful. The particular part of their business here ordered to cease has been made unlawful. Congress has a power to regulate interstate commerce so full and complete that it may prohibit what is of harmful tendency therein, much like a State may in other fields by virtue of the police power. We have no doubt that the regulation before us escapes being arbitrary, and has a real relation to the health and purity of interstate commerce. Cases tending to sustain this and other points ruled are Biddle Purchasing Co. v. Federal Trade Commission, 2 Cir., 96 F.2d 687; Oliver Bros. v. Federal Trade Commission, 4 Cir., 102 F.2d 763; Great Atlantic & Pacific Tea Co. v. Federal Trade Commission, 3 Cir., 106 F.2d 667.

The order under review is sustained and obedience to it is commanded.