## INDEPENDENT GROCERS ALLIANCE DISTRIBUTING CO. v. FEDERAL TRADE COMMISSION.

### No. 10606.

United States Court of Appeals
Seventh Circuit.

April 29, 1953.

Lyman W. Sherwood, Lewis G. Groebe, Ungaro & Sherwood, Chicago, Ill., for petitioners.

W. T. Kelley, Gen. Counsel, James E. Corkey, Atty., Federal Trade Commission, Robert B. Dawkins, Asst. Gen. Counsel, Washington, D. C., for respondent.

Before MAJOR, Chief Judge, and FINNEGAN and SWAIM, Circuit Judges.

FINNEGAN, Circuit Judge.

This is a petition to review and set aside a cease and desist order issued by the Federal Trade Commission as the outcome of a complaint charging petitioner and others with having violated Section 2(c) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C.A. § 13(c).

The complaint, issued on April 18, 1946, alleged that the petitioner, Independent Grocers Alliance Distributing Company, while acting as an intermediary, had been and was accepting brokerage and commission from numerous sellers on transactions in which the Alliance was in fact acting on its own behalf and in behalf of the purchasers in such transactions in violation of Section 2(c) of the Clayton Act, as amended. The section provides as follows:

"Section 2(c). That it shall be unlawful for any person engaged in commerce, in the course of such commerce,

to pay or grant, or to receive or accept, anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares, or merchandise, either to the other party to such transaction or to an agent, representative, or other intermediary therein where such intermediary is acting in fact for or in behalf, or is subject to the direct or indirect control, of any party to such transaction other than the person by whom such compensation is so granted or paid." 49 Stat. 1527, 15 U.S.C.A. § 13(c).

The complaint identified the purchasers as wholesale grocery concerns affiliated with I. G. A. by virtue of contracts or so-called franchise agreements. The complaint charged that in addition to I. G. A. and its directors, the provisions of sec. 2(c) were violated by The Grocers Company and its directors, who were charged with receiving and accepting for the benefit of the wholesale grocers affiliated with I. G. A., part of the brokerage fees collected by the Alliance on the purchases of such wholesalers. Stokely Brothers & Company, Inc., Jersey Cereal Company, Dean Milk Company, and Cupples Company were also charged with violations by reason of the payment of brokerage to the Alliance on purchases and sales in which the Alliance was acting for and in behalf of its affiliated wholesalers. These sellers are alleged to be typical of a large group of manufacturers, producers, and processors engaged in selling a substantial portion of their commodities to buyers who purchased through I. G. A. as an intermediary for such buyers. Franklin MacVeigh & Company, E. R. Godfrey & Sons Company, Winston & Newell Company, and Wetterau Grocer Company, Inc., are charged individually and as members of a class consisting of wholesale grocery concerns, each of which was alleged to be affiliated with and under contract with I. G. A., and each of which was a stockholder of the Grocers Company, with having received brokerage or an allowance in lieu thereof on purchases they made through I. G. A.

The Jersey Cereal Company, Dean Milk Company, and Cupples Company did not file answers to the complaint. Stokely-Van Camp, Inc. (designated in the complaint as Stokely Brothers & Company, Inc.) answered denying the charges but took no further part in the proceedings. The Grocers Company, and its directors, and E. R. Godfrey & Sons Company, Wetterau Grocer Company, Inc., and Winston & Newell filed answers admitting the material allegations of the complaint with a few minor corrections that raised no controversial issues. Winston & Newell also entered into a stipulation as to certain facts not encompassed in its answer and later successfully argued to the Commission that it should not be included in any order that might be issued. Franklin MacVeigh & Company joined in the stipulation of facts signed by petitioners herein, but took no further part in the proceedings.

The answer filed by Independent Grocers Alliance Distributing Company and its six directors denied the material allegations of the complaint. In particular it was denied that I. G. A., when acting as an intermediary in purchase and sales transactions, was acting in its own behalf and for and in behalf of the purchasers in such transactions. On the contrary, it was asserted that I. G. A. had acted for and in behalf of the sellers in all purchase and sales transactions in which it has been engaged.

The issues raised by the answer of the Alliance and its directors were disposed of by a stipulation of facts which incorporated numerous exhibits. The stipulation was signed by counsel representing the complaint, by counsel for the I. G. A., and its directors, and also by counsel for Franklin MacVeigh & Company.

The stipulation provided that with respect to the parties the Commission might without:

"* * * the adduction of other evidence, and without intervening procedure, hear this matter on the complaint, respondents' answers, this stipulation, briefs and oral arguments by counsel for the respondents and for the Commission, and proceed to make and enter its findings of fact, inferences,

and conclusions based thereon and enter its order disposing of this proceeding."

At a subsequent hearing before the examiner three of the six directors of I. G. A., *i. e.*, James D. Godfrey, Ned N. Fleming, and Robert H. Perlitz after changing attorneys, and after leave obtained, withdrew the answer previously filed in so far as it applied to them, and filed a substitute answer admitting the material allegations of the complaint with some few unimportant factual corrections. These parties took no further part in the proceedings.

Proposed findings of fact and conclusions were filed with the hearing examiner by counsel supporting the complaint and by counsel for petitioners herein, and the examiner heard oral argument on the various contentions advanced. Thereafter he filed his recommended decision and the matter was briefed and oral argument was had before the Commission on November 23, 1948. Before the Commission reached a decision, two vacancies occurred in its membership and when these were filled, the Commission, on its own motion, set the matter down for reargument, which took place on November 2, 1950.

On April 16, 1951, some five months after the second oral argument to the Commission, the petitioners herein filed a petition with the Commission for leave to adduce additional evidence. This petition was made on the ground that certain remarks of Commission counsel during the reargument before the Commission were prejudicial to petitioners, and, that consequently, they were entitled to submit evidence in contradiction. On May 17, 1951, the Commission denied the petition for the reason that the record was clearly sufficient to enable it to dispose of all issues involved and the evidence proposed to be introduced would be irrelevant and immaterial to any of the issues. On March 7, 1952, the Commission entered its findings as to the facts, concluded that petitioners and certain other parties had violated sec. 2(c) of the Robinson-Patman Act as alleged, and entered its order to cease and desist.

On April 3, 1952, petitioners filed in this Court a petition to review and set aside the Commission's order. Thereafter, on November 3, 1952, they filed a petition for leave to adduce additional evidence. This petition the Court denied without prejudice to the right of petitioners to renew the request upon the hearing on the merits.

Petitioners contend that the cease and desist order of the Commission should be set aside because they claim the I. G. A. acted for the sellers in the transactions in connection with which the Alliance received brokerage or commissions from the sellers; and that I. G. A. in such transactions did not pass on to the buyers brokerage or commissions it received from the sellers. They likewise urge in the alternative that this court direct that the cause be remanded to the Commission to hear evidence on the question whether, since the effective date of the Act charged to have been violated, the Alliance rendered brokerage services to the sellers under agreements with such sellers.

The respondent Commission on the other hand urges the affirmance of the order issued against I. G. A. and its directors.

The question presented by the first and second contentions of the petitioners is whether or not the Alliance, as an intermediary in the purchase transactions of its affiliated wholesalers, acts for and on behalf of such wholesalers or acts for and on behalf of the sellers in such transactions. The Commission considering the facts shown with respect to the franchise agreements between Alliance and its wholesalers, considering also the license agreements of Alliance to the sellers authorizing such sellers to use labels, brands and trade marks belonging to Alliance, and considering the ownership and management of I. G. A., and the disbursements made by the Alliance of the brokerage it received in such transactions, found that I. G. A. acted for and on behalf of its affiliated wholesalers in such transactions.

We might, as the Commission did, examine in detail each of the above specified phases of the question involved. The finding of facts made by the Commission embraces more than 35 printed pages of the record, and any examination we might make would be equally as lengthy. Manifestly

such as examination is not practicable in this opinion. In its last finding the Commission, in summarizing its examination, said:

> "Paragraph 18: (a) In the transactions of purchase and sale hereinbefore described, respondent Independent Grocers Alliance Distributing Company has, by reason of the facts already set forth, including more particularly those referred to in this sub-paragraph, acted for and in its own behalf and for and in behalf of the buyer-respondent and other buyers."

> "(1) The capital stock of respondent Independent Grocers Alliance Distributing Company is and has been owned and controlled by two holding corporations—Market Specialty Company and the Grocers Company—the controlling stock of both of which is owned by individuals, partnerships, or corporations which also own or control, directly or indirectly, through stock ownership, or otherwise, wholesale grocery firms which are and have been buyers through said respondent, and which directly or indirectly receive and have received the benefit of brokerages or commissions paid by sellers to respondent Independent Grocers Alliance Distributing Company on said buyers' purchases; and, further, each of respondent Independent Grocers Alliance Distributing Company's officers and directors, with the exception of William W. Thompson, is an official or director of a wholesale grocery firm which is or has been a buyer of merchandise through Independent Grocers Alliance Distributing Company and which directly or indirectly receives and has received the benefit of brokerages or commissions paid to Independent Grocers Alliance Distributing Company by sellers upon said buyers' purchases.

> "(2) Through the operation of franchise agreements executed between respondent Independent Grocers Alliance Distributing Company and its affiliated wholesale grocers, said respondent collects and receives from said wholesale grocers certain monthly fees as compensation for purchasing services and for other services rendered to said wholesale grocers in connection with their purchase and sale of merchandise; and, further, in connection with merchandise packed for sale under I. G. A. labels, allots, restricts, and designates the territory and channels through which said merchandise may be sold.

> "(3) Through the operation of contracts executed between respondent Independent Grocers Alliance Distributing Company and selected seller-respondents and other selected sellers, packers, manufacturers, and producers, respondent Independent Grocers Alliance Distributing Company specifies and controls the quality of merchandise which said sellers may pack and sell under the I. G. A. brands; controls, restricts, and designates the number and type of buyers to whom said merchandise may be sold, and determines through negotiation with said sellers the prices at which said merchandise may be sold to said buyers.

> "(4) Respondent Independent Grocers Alliance Distributing Company passes on and has passed on said brokerages, commissions, or other compensation received by it from sellers to the buyer-respondents and other buyers in the form of services, including advertising allowances restricted to the promotion of I. G. A.-branded merchandise and known as 'territorial advertising' and in the form of stock dividend payments, 50% of which said respondent paid to its stockholder-respondent the Grocers Company, for the benefit of the buyer-respondents (except Winston & Newell Co.) and other buyers who own the majority of the stock of respondent the Grocers Company."

In view of the ultimate finding the Commission necessarily concluded that I. G. A. in accepting brokerage fees or commissions on the purchases of its affiliated wholesalers was violating the provisions of sec. 2(c) of the Robinson-Patman Act. Accordingly,

the Commission entered its order requiring petitioners to cease and desist from:

"Receiving or accepting, directly or indirectly, from any seller, or from respondent Independent Grocers Alliance Distributing Company, anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, upon any purchase for the account of respondent Independent Grocers Alliance Distributing Company or for the account of any stockholder of respondent Independent Grocers Alliance Distributing Company or respondent The Grocers Company, or for the account of any wholesale grocery concern affiliated or under contract with respondent Independent Grocers Alliance Distributing Company, or in connection with any purchase wherein said respondents act in fact for or in behalf or subject to the direct or indirect control of any party to the transaction other than the seller."

▆ We have given considerable time to an examination of the stipulation of facts and of the exhibits attached thereto and are satisfied that the findings of the Commission are supported by the stipulation and inferences properly drawn therefrom. As a consequence we must regard the findings of the Commission as conclusive. Federal Trade Commission v. Standard Education Society, 302 U.S. 112, 58 S.Ct. 113, 82 L.Ed. 141; Federal Trade Commission v. Algoma Lumber Co., 291 U.S. 67, 54 S.Ct. 315, 78 L. Ed. 655; Modern Marketing Service v. Federal Trade Commission, 7 Cir., 149 F. 2d 970–973. Furthermore, the weight to be given to established facts, as well as the inferences reasonably to be drawn therefrom, are for the Commission. Federal Trade Commission v. Pacific States Paper Trade Ass'n, 273 U.S. 52–63, 47 S.Ct. 255, 71 L.Ed. 534.

▆ There is abundant authority to the effect that intermediaries acting in behalf or under the control of buyers may not receive brokerage payments upon the purchases of such buyers. Biddle Purchasing Co. v. Federal Trade Commission, 2 Cir., 96 F.2d 687; Oliver Bros., Inc. v. Federal Trade Commission, 4 Cir., 102 F.2d 763; Modern Marketing Service v. Federal Trade Commission, 7 Cir., 149 F.2d 970 and Federal Trade Commission v. Herzog, 2 Cir., 150 F.2d 450.

It remains to consider petitioner's contention that they should have been permitted to adduce additional evidence and that the cause should be remanded to the Commission with directions that they be allowed to do so.

The right to present a petition for leave to adduce additional evidence is governed by sec. 11 of the Clayton Act, 38 Stat. 734, 15 U.S.C.A. § 21. The pertinent part of sec. 11 is as follows:

"If either party shall apply to the court for leave to adduce additional evidence, and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the proceeding before the Commission, Authority, or Board, the court may order such additional evidence to be taken before the Commission or Board and to be adduced upon the hearing in such manner and upon such terms and conditions as to the court may seem proper. * * *"

In the matter at bar the cause was submitted to the Commission upon a stipulation (already quoted) which provided that without the adduction of other evidence the Commission might proceed to consider the stipulation, briefs and arguments and dispose of the matter. The complaint herein was filed on behalf of the Federal Trade Commission on April 18, 1946. The stipulation appears to have been entered into in 1947. The petition for leave to adduce additional evidence was filed in 1951.

The petitioners made no offer of proof of any kind before the Commission and leave to adduce additional evidence was denied by the Commission on May 17, 1951.

Petitioners in their briefs in this court claim that counsel appearing in support of the complaint would not agree to incorporate the additional proof in the stipulation. They now assert that to make an

offer of proof would have been a useless act, and extremely expensive, and they further claim that they believed the decision of the Commission would be in their favor on other grounds, and that such evidence was not necessary.

■ We are not impressed by petitioner's present contentions. The Supreme Court said in Southport Petroleum Co. v. Labor Board, 315 U.S. 100, 62 S.Ct. 452, 455, 86 L.Ed. 718:

"To insure that (the petition) would be used only for proper purposes, and not abused by resort to it as a mere instrument of delay, Congress provided that before the court might grant relief thereunder it must be satisfied of the materiality of the additional evidence, and that there were reasonable grounds for failure to adduce it at the hearing before the Board. * * *"

The petition to set aside and vacate the Commission's order and the motion for the entry of an order remanding the cause to the Commission are, and each of them is therefore denied, and the order of the Federal Trade Commission against I. G. A. and its directors is affirmed.