KENTUCKY RURAL ELECTRIC CO-OPERATIVE CORPORATION, Plaintiff,

v.

MOLONEY ELECTRIC COMPANY, Defendant.

Civ. No. 3526.

United States District Court W. D. Kentucky, at Louisville.

July 7, 1959.

Philip P. Ardery, Louisville, Ky., for plaintiff.

Malcolm Y. Marshall and Richard F. Newell, Ogden, Brown, Robertson & Marshall, Louisville, Ky., William H. Ferrell, Keefe, Schlafly, Griesedieck & Ferrell, St. Louis, Mo., for defendant.

SHELBOURNE, Chief Judge.

This suit was instituted January 6, 1958, by the Kentucky Rural Electric Cooperative Corporation, plaintiff, against Moloney Electric Company, defendant, seeking to recover three times the alleged damage of $367,000, or an aggregate of $1,101,021, plus reasonable attorney's fees, under the provisions of the Robinson-Patman Act, Sections 13, 13a, 15 and 22, Title 15, United States Code Annotated.

The defendant is a manufacturer of electrical equipment and supplies. It is the contention of the plaintiff that it was a distributor, supplier, jobber and manufacturer's sales representative; that in April, 1949, plaintiff began business as a distributor of electrical transformers manufactured by the defendant, and from that date until October 15, 1955, was the distributor of transformers to rural electric cooperative corporations in Kentucky and as such sold approximately $4,000,000 worth of defendant's transformers, maintaining and operating warehousing facilities for defendant's products in Kentucky; that on October 15, 1955, pursuant to previous notice, defendant refused to accept further orders, and arbitrarily and without right terminated the previously existing arrangement; that such termination had the effect of lessening competition between distributors, suppliers, jobbers and manufacturer's sales representatives of electrical equipment, and tended to create a monopoly and to destroy and prevent competition; that this was an unlawful discrimination in favor of certain distributors, suppliers, jobbers and manufacturer's sales representatives in competition with plaintiff; that thereby the defendant has prevented plaintiff from obtaining similar electrical equipment and supplies on the same basis existing prior to October 15, 1955, and that plaintiff has thereby been damaged.

December 31, 1958, plaintiff filed its amended complaint, reducing the amount of damages sought to $472,666.20, three times the actual damage sustained alleged to have been $157,555.40.

The defendant, by its answer to the original and to the amended or substituted complaint, denied the material allegations of the complaint as amended and, by its Fifth Defense, alleged that all of the sales of defendant's equipment through the plaintiff were to rural electric cooperative corporations engaged in the business of generating and distributing electric energy; that 98.14 per cent of such sales were to rural electric cooperative corporations which owned the plaintiff corporation, and the remaining 1.86 per cent of the total sales were made to rural electric cooperative corporations which were entitled to share and participate in all of the profits of the plaintiff upon the basis of each of such distribution cooperatives' purchases of the products and services distributed and made available by the plaintiff; that the plaintiff was acting as agent and representative of both the member cooperatives and participating cooperatives, and that the member cooperatives were the owners of the plaintiff corporation which was subject to the direct and indirect control of the member cooperatives.

The defendant alleged that the paying or granting by the defendant to the plaintiff and the receiving or accepting by the plaintiff from the defendant of commission, brokerage or other compensation or discount upon the purchase by the member cooperatives and the participating cooperatives of transformers and other equipment manufactured by the defendant was unlawful by reason of the provisions of Section 2(c) of the Clayton Act as amended by the Robinson-Patman Act, and that the agreement between the plaintiff and the defendant for the making of such payments, allowances, discounts or commissions was illegal, unenforceable, and void.

Two or more pre-trial conferences were had, discovery processes employed by counsel in the case and, on February 5, 1959, defendant filed its motion for a summary judgment. This motion has been briefed, and there is substantially no dispute between the parties as to the facts. As Judge Parker stated in the case of Oliver Bros., Inc. v. Federal Trade Commission, 4 Cir., 102 F.2d 763, 766, " * * * the controversy here is over the conclusions to be deduced from the facts rather than over the facts themselves; * * *."

The plaintiff, Kentucky Rural Electric Cooperative Corporation, is not an operating rural electric cooperative corporation; it does not generate, transmit or distribute electrical energy, but it is styled by counsel in this case a "super cooperative" owned and controlled by the operating cooperatives. In its by-laws, one of its recited purposes is to purchase materials, supplies and equipment for its members. The plaintiff, while acting as defendant's distributor, agent or broker, did not seek to obtain orders from purchasers other than rural electric cooperative corporations. The complaint of the plaintiff here is that Moloney Electric Company, on and after October 15, 1955, refused to pay commission or discount upon sales of Moloney's equipment through the plaintiff to member and participating cooperatives.

Section 2(c) of the Clayton Act, as amended by the Robinson-Patman Act, Section 13(c), Title 15, United States Code Annotated, provides:

"It shall be unlawful for any person engaged in commerce, in the course of such commerce, to pay or grant, or to receive or accept, anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares, or merchandise, either to the other party to such transaction or to an agent, representative, or other intermediary therein where such intermediary is acting in fact for or in behalf, or is subject to the direct or indirect control, of any party to

such transaction other than the person by whom such compensation is so granted or paid."

It is the contention of the defendant that under this statute it is unlawful for a seller to pay a commission, discount or brokerage to either (1) the buyer, or (2) an intermediary who is acting in fact for or in behalf of the buyer, or (3) an intermediary who is subject to the direct or indirect control of the buyer, and that the statute likewise makes the acceptance or receipt of any such commission, discount or compensation unlawful.

All of the member cooperatives owning the plaintiff corporation and the participating cooperatives at each year's end shared in the profits derived by the plaintiff from the commissions and discounts paid by the defendant to plaintiff in proportion or on a basis of their respective purchases of Moloney's products.

The plan of operation consummating sales to member cooperatives during the period from April 1949 to October, 1955, was for the plaintiff to take from a member or participating cooperative an order for Moloney equipment and forward such order to Moloney at St. Louis. The ordered equipment was billed direct to the ordering cooperative at the usual or ordinary retail price, and the defendant Moloney would then forward the commission, brokerage or discount to the plaintiff. Moloney has not indicated an unwillingness to continue to sell its equipment to the member and participating cooperatives, but declines to pay to plaintiff the discount or brokerage as formerly done.

In Oliver Bros., Inc. v. Federal Trade Commission, supra, the following interpretation of Section 2(c) of the statute from the Report of the House and Senate Conference Committee is quoted on page 768:

" 'This subsection permits the payment of compensation by a seller to his broker or agent for services actually rendered in his behalf; likewise by a buyer to his broker or agent for services in connection with the purchase of goods actually rendered in his behalf; but it prohibits the direct or indirect payment of brokerage except for such services rendered. It prohibits its allowance by the buyer direct to the seller, or by the seller direct to the buyer; and it prohibits its payment by either to an agent or intermediary acting in fact for or in behalf, or subject to the direct or indirect control, of the other.' "

And, on page 770 of the opinion, Judge Parker said:

"No one would contend that, without violating this section, a broker representing the seller could give his commissions to the buyer; * * *. We may assume that under the section it is permissible for a broker to render services to both buyer and seller and to receive from both compensation for the services rendered; but this is a very different thing from the buyer himself receiving the compensation."

In the case of Great Atlantic & Pacific Tea Co. v. Federal Trade Commission, 3 Cir., 106 F.2d 667, 673, with respect to Section 2(c), the court said, "We * * * believe that paragraph (c) expresses an absolute prohibition of the payment of brokerage or compensation in lieu thereof to the buyer upon the buyer's own purchases." The court stated in that case that the question presented is simply whether or not the vendee may be compensated for services rendered by the vendee's agent acting as agent for the vendors, and said:

"We entertain no doubt that it was the intention of Congress to prevent dual representation by agents purporting to deal on behalf of both buyer and seller. For this reason paragraph (c) is framed by disjunctives. The edge of the paragraph cuts two ways, prohibiting the payment or receipt of commissions, discounts or brokerage to the adversary party by the other's agent. * * * The agent cannot serve two

masters, simultaneously rendering services in an arm's length transaction to both. \* \* \* In short, a buying and selling service cannot be combined in one person."

In Biddle Purchasing Co. v. Federal Trade Commission, 2 Cir., 96 F.2d 687, 691, that court said:

"It is clear that the statute [referring to 2(c)] prohibits payment of brokerage by the seller to the buyer or his agent or representative or controlled intermediary except for services rendered.

\* \* \* \* \*

"Congress must have intended that payments by sellers should not be made to buyers through any one acting as agent for the buyer."

The intermediary or broker may not receive fees from the seller which he in fact turns over to the buyer. See also Webb-Crawford Co. v. Federal Trade Commission, 5 Cir., 109 F.2d 268; Quality Bakers of America v. Federal Trade Commission, 1 Cir., 114 F.2d 393; Jarrett v. Pittsburgh Plate Glass Co., 5 Cir., 131 F.2d 674; Fitch v. Ky.-Tenn. Light & Power Co., 6 Cir., 136 F.2d 12, 149 A.L.R. 650; Modern Marketing Service, Inc. v. Federal Trade Commission, 7 Cir., 149 F.2d 970; Federal Trade Commission v. Herzog, 2 Cir., 150 F.2d 450; Southgate Brokerage Co. v. Federal Trade Commission, 4 Cir., 150 F.2d 607; Independent Grocers Alliance Distributing Co. v. Federal Trade Commission, 7 Cir., 203 F.2d 941.

Plaintiff's counsel seeks to avoid the teaching of the above cases as to the meaning of Section 2(c) by such cases as Bruce's Juices v. American Can Co., 330 U.S. 743, 67 S.Ct. 1015, 91 L.Ed. 1219; Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219; Moore v. Mead Service Co., 10 Cir., 190 F.2d 540; Noerr Motor Freight v. Eastern Railroad Presidents Conference, D.C., 155 F.Supp. 768.

The sole question decided in the case of Bruce's Juices, as stated by the Supreme Court, is whether notes given for purchases are unenforceable if the quantity discount plan violates the Act (Robinson-Patman Act). At page 750 of 330 U.S., at page 1018 of 67 S.Ct., in the opinion the Court said:

"The Act prescribes sanctions, and it does not make uncollectibility of the purchase price one of them. Violation of the Act is made criminal and upon conviction a violator may be fined or imprisoned. \* \* \* Any person who is injured in his business or property by reason of anything forbidden therein may sue and recover threefold the damages by him sustained and the costs of suit, including a reasonable attorney's fee."

However, on page 755 of 330 U.S., at page 1020 of 67 S.Ct., the Court continued:

"This Court has held that where a suit is based upon an agreement to which both defendant and plaintiff are parties, and which has as its object and effect accomplishment of illegal ends which would be consummated by the judgment sought, the Court will entertain the defense that the contract in suit is illegal under the express provision of that statute. Continental Wall Paper Co. v. Louis Voight & Sons Co., 212 U.S. 227, 29 S.Ct. 280, 53 L.Ed. 486."

On page 756 of 330 U.S., at page 1021 of 67 S.Ct. of the opinion in Bruce's Juices, supra, citing McMullen v. Hoffman, 174 U.S. 639, 19 S.Ct. 839, 43 L.Ed. 1117, the Supreme Court said, "If, in order to prove his own case, a plaintiff proves his violation of law, then no court will aid the plaintiff to recover."

We think plaintiff's reliance upon the Kiefer-Stewart case, supra, is likewise unfounded. Kiefer-Stewart's suit against Seagram charged the latter with conspiracy with other distillers to maintain a fixed maximum retail price for liquor by selling only to wholesalers who agreed to maintain the fixed maximum retail price. Seagram's defense was that Kiefer-Stewart had entered into illegal agreements, fixing minimum retail pric-

es, with other Indiana wholesalers. Hence, the suit was not between parties who had entered into the same illegal contract, the alleged breach of which constituted the gravamen of the suit. The Supreme Court held this defense unavailing.

Following the Kiefer-Stewart opinion, in the case of National Transformer Corp. v. France Mfg. Co., 215 F.2d 343, 361, the Court of Appeals for the Sixth Circuit said:

"It may be here emphasized that a contract which cannot be performed without violation of a statute is illegal and void. Where parties are in pari delicto, the law will leave them where it finds them, and all relief is refused because of the public interest. Twin City Pipe Line Co. v. Harding Glass Co., 283 U.S. 353, 51 S.Ct. 476, 75 L.Ed. 1112. The defendant may assert the invalidity of an agreement, even though he is a participator in the wrong. Standard Lumber Co. v. Butler Ice Co., 3 Cir., 146 F. 359. The defense of illegality is allowed, not as a protection to the defendant, but as a disability to the plaintiff."

See also Pennsylvania Water & Power Co. v. Consolidated G. E. L. & P. Co., 4 Cir., 209 F.2d 131.

Plaintiff also relies on the Supreme Court's opinion in Kelly v. Kosuga, 358 U.S. 516, 79 S.Ct. 429, 3 L.Ed.2d 475. The Kelly case was likewise a suit to recover the purchase price of commodities sold to it. The defense was sought to be made that the sale was pursuant to an agreement which violated the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note. The Supreme Court, on page 518 of 358 U.S., on page 431 of 79 S.Ct. of its opinion, said:

"As a defense to an action based on contract, the plea of illegality based on violation of the Sherman Act, has not met with much favor in this Court. This has been notably the case where the plea has been made by the purchaser in an action to recover from him the agreed price of goods sold."

The plaintiff here disavows any intent or purpose that its suit is based on a breach of contract. Conversely, it states that it is for a tort resulting from the violation of a statute. The answer to that contention seems obvious to this Court: if it be tort for the defendant to refuse to continue the transactions with the plaintiff, which by the terms of the statute are unlawful both as to plaintiff and defendant, then neither plaintiff nor defendant has a valid claim against the other arising out of the alleged tortious refusal to continue such transactions banned by the statute.

There being no substantial dispute as to the facts here involved, we believe the authorities referred to herein and cited by counsel in their briefs entitle the defendant to a summary judgment. Counsel for defendant will submit an appropriate judgment, upon notice to plaintiff's counsel, in accordance with the rules of this Court.