KENTUCKY RURAL ELECTRIC COOPERATIVE CORPORATION, Plaintiff-Appellant,

v.

MOLONEY ELECTRIC COMPANY, Defendant-Appellee.

No. 13992.

United States Court of Appeals Sixth Circuit.

Sept. 14, 1960.

Philip P. Ardery of Brown, Ardery, Todd & Dudley, Louisville, Ky., for appellant.

Malcolm Y. Marshall and Richard F. Newell, Ogden, Brown, Robertson & Marshall, Louisville, Ky., and William H. Ferrell of Keefe, Schlafly, Griesedieck & Ferrell, St. Louis, Mo., on the brief, for appellee.

Before MILLER and CECIL, Circuit Judges, and HOLLAND, Senior District Judge.

SHACKELFORD MILLER, Jr., Circuit Judge.

The appellant, Kentucky Rural Electric Cooperative Corporation, hereinafter referred to as KYRECC, brought this action against the appellee, Moloney Electric Company, hereinafter referred to as Moloney, to recover triple damages in the amount of $472,666.20 under the provisions of the Robinson-Patman Act, Sections 13, 13a, 15 and 22, Title 15 U.S.C.A.

KYRECC is a Rural Electric Co-operative Corporation incorporated under the Kentucky statutes. It is not an operating rural electric co-operative and does not generate, transmit or distribute electric energy. It is a so-called "super co-operative," owned and controlled by twenty-two operating co-operatives. Among the purposes recited in its bylaws is to "purchase materials, supplies and

equipment for its members," the co-operatives.

Moloney manufactures electrical equipment and supplies.

Beginning in 1949, KYRECC started handling transformers and a few other items of equipment manufactured by Moloney. It would take from a co-operative an order for Moloney equipment and send the order to Moloney in St. Louis. Moloney would bill the co-operative the ordinary price for the equipment and send to KYRECC its commission on the sale. During the period 1949 to October 15, 1955, Moloney paid to KYRECC a commission between 7½% and 10% upon all sales of Moloney equipment effected through KYRECC. During this period KYRECC did not make any sale to any customer or purchaser other than the co-operatives.

In October, 1955, Moloney notified KYRECC that it would thereafter not pay to KYRECC such commissions on orders placed subsequent to October 15, 1955, and in accordance with such notice has since October 15, 1955, refused to pay any commissions to the appellant.

KYRECC's complaint alleged that Moloney's refusal to accept further orders and its arbitrary termination of the previously existing arrangement had the effect of lessening competition between distributors and manufacturer's sales representatives of electrical equipment, that it tended to create a monopoly and destroy and prevent competition, and was unlawful discrimination in favor of certain distributors, suppliers, jobbers and manufacturer's sales representatives in competition with KYRECC, by reason of which KYRECC had suffered damage in the amount of $157,555.40.

Moloney contends that with respect to the purchase by the distribution co-operatives, through KYRECC, of transformers and equipment manufactured by Moloney, KYRECC was an agent and representative of, and was acting in fact for and in behalf of both the member co-operatives, who were owners of KYRECC, and the participating co-operatives, and that the payment by Moloney to KYR

ECC and the acceptance by KYRECC from Moloney of anything of value as a commission upon the purchase through KYRECC of transformers and other equipment manufactured by it was unlawful by reason of provisions of Section 2(c) of the Clayton Act, as amended by the Robinson-Patman Act, Section 13(c), Title 15 U.S.C.A. For that reason it claims it was legally required to terminate the payment of such commissions and that its action in refusing to do an illegal act did not subject it to liability.

Section 2(c) of the Clayton Act, as amended, provides as follows:

"It shall be unlawful for any person engaged in commerce, in the course of such commerce, to pay or grant, or to receive or accept, anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares, or merchandise, either to the other party to such transaction or to an agent, representative or other intermediary therein where such intermediary is acting in fact for or in behalf, or is subject to the direct or indirect control, of any party to such transaction other than the person by whom such compensation is so granted or paid."

The facts are not in dispute and were established by the testimony of the executive manager of KYRECC, its articles of incorporation, bylaws, and other exhibits. Moloney's motion for summary judgment was sustained by the District Judge, from which ruling this appeal was taken.

There is no merit in KYRECC's complaint that it was error for the District Judge to dispose of the case on a motion for summary judgment. The undisputed facts presented pure questions of law, and KYRECC was afforded full opportunity to be heard on the legal issues presented by the pleadings. Feldman v. Miller, 95 U.S.App.D.C. 146, 220 F.2d 826. Even though the issue be a

difficult one, if it is purely legal and not factual, summary judgment is proper. Morr v. United States, 6 Cir., 243 F.2d 913, 914.

In support of this ruling, the District Judge filed a memorandum opinion, which is reported at Kentucky Electric Cooperative Corporation v. Moloney Electric Company, D.C., 175 F.Supp. 250. For the reasons given and the authorities cited therein, to which reference is made, we are of the opinion that the commissions paid by Moloney to KYRECC were in violation of the Act. We see no logical escape under the facts of this case from the conclusion that such payments were by the seller to an intermediary in the transaction, where such intermediary was acting in fact for or in behalf, *or* was subject to the direct or indirect control, of a party to the transaction other than the person by whom such commission was paid.

Other questions are, however, presented by this appeal.

█ Appellant contends that although the receipt of such commissions by KYRECC may have been illegal under the Act, such illegal act is not a defense to liability on the part of Moloney in an action brought by KYRECC against Moloney for its violation of other provisions of the Robinson-Patman Act, as alleged by the complaint in this action. Reliance is placed upon Bruce's Juices, Inc., v. American Can Co., 330 U.S. 743, 67 S.Ct. 1015, 91 L.Ed. 1219; Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc., 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219; Kelly v. Kosuga, 358 U.S. 516, 79 S.Ct. 429, 3 L.Ed.2d 565. We recently considered this question in Tampa Electric Co. v. Nashville Coal Co., et al., 6 Cir., 276 F.2d 766, 773–774. As there pointed out, under the Supreme Court cases above referred to, a defendant who has engaged in transactions which are illegal under the anti-trust laws is not entitled to protection in a controversy arising out of such transactions merely because the plaintiff has also engaged in transactions illegal under the anti-trust laws. But if the judgment sought by the plaintiff requires the defendant to do that which is illegal under the Act, the Court will not require him to do so, not because of the illegality of the plaintiff's conduct, but because public policy forbids a decree directing defendant to violate the restraints provided by the Act. Continental Wall Paper Co., v. Louis Voight & Sons Co., 212 U.S. 227, 262, 29 S.Ct. 280, 53 L.Ed. 486. We think it necessarily follows that the Court will not adjudge liability against a defendant for refusing to do that which the Act makes it illegal for him to do. Since the payment of commissions to appellant was illegal under the Act, the District Judge was correct in ruling that no cause of action arose in favor of appellant upon appellee's refusal to make the illegal payments. As pointed out by the District Judge, the present action is not for breach of contract but for damages for violation of the anti-trust laws, and that Moloney has not refused to sell its equipment to the member and participating co-operatives, but has only declined to pay appellant a commission on such sales.

██ Appellant finally contends that by reason of Section 4 of the Clayton Act as amended by the Robinson-Patman Act, Section 13b, Title 15 U.S.C.A., KYRECC is exempt from the provisions of Section 2(c) of the Act under the facts of this case. Section 4 provides as follows:

"Nothing in sections 13–13b, and 21a of this title shall prevent a co-operative association from returning to its members, producers, or consumers the whole, or any part of, the net earnings or surplus resulting from its trading operations, in proportion to their purchases or sale from, to, or through the association."

Appellant argues that essentially every co-operative's function is to either purchase materials, supplies or services at a discount, and pass them on to its members, or else to sell materials, supplies or services of its members to third parties, receiving from the third parties what in essence is a brokerage or commission,

and that it was the purpose of Section 4 to protect such well established and recognized practices.

We agree that it was the purpose of Section 4 to protect co-operatives in their competition with corporate competitors. But this protection was specifically limited to the provision that a co-operative would not be in violation of the Act merely because of its structure as a co-operative with the distribution of its co-operative earnings among its members on a patronage basis. Under Section 4 such a distribution does not in and of itself constitute a violation of the Act, even though the act of returning profits to its members might technically be considered as constituting a discriminatory rebate or price discrimination in favor of its member purchasers and against its non-member purchasers. But that is as far as the exemption goes. If Congress intended to exempt co-operatives from the various anti-trust and price discrimination provisions of the Act, it could easily have said so. It did not do so. Section 4 deals only with the single act of a co-operative returning its profits to its members. It does not exempt a co-operative in the acquisition of such profits in its business operations before they are distributed. Quality Bakers of America v. Federal Trade Commission, 1 Cir., 114 F.2d 393, 399–400. Compare: Maryland and Virginia Milk Producers Association, Inc., v. United States, 362 U.S. 458, 464–466, 80 S.Ct. 847, 4 L.Ed.2d 880. Appellant has referred us to no authority to the contrary.

The judgment is affirmed.