Arthur C. Aulisi, J.
Plaintiff entered into negotiations with defendant to act as defendant’s factory representative in an area that encompasses, among others, Southern New York, New Jersey, Delaware, Connecticut, and a portion of Pennsylvania. At the time in issue, plaintiff was owned solely by Mr. Morton L. Ackerman, who was also the sole shareholder in Ackerman-New York, Inc., a distributor of defendant’s products. AckermanNew York, Inc. purchased defendant’s products through plaintiff.
There is no dispute that from September, 1967, until January 2,1968, plaintiff acted as sales representative for the defendant without benefit of contract. Defendant paid plaintiff 4% commissions on all sales of defendant’s merchandise within the prescribed area. During this time, negotiations continued hut no contract was entered into. On January 2, 1968, defendant’s president sent to plaintiff a letter setting forth proposed contract terms. In that letter, he requested that plaintiff sign a copy of the proposed contract and return same to defendant for its file. This was never done, nor did plaintiff give any verbal assent to the terms as proposed. There was no change in the relationship of the parties until defendant was informed by its counsel that the payment of commissions to plaintiff for sales connected with Ackerman-New York, Inc. were in violation of the Eobinson-Patman Act (U. S. Code, tit. 15, *687 § 13 et seq.). Defendant, by letter dated June 5, 1968, notified plaintiff of its counsel’s advice and ceased paying commissions to plaintiff on sales to Ackerman-New York, Inc. However, defendant continued to pay plaintiff commissions for sales made to other distributors. Plaintiff then commenced, this action for commissions it claimed were due and owing for sales to Ackerman-New York, Inc. from June 1, 1968 to June 30, 1969. On this motion, we are only concerned with sales from June 6, 1968 since from documentary proof submitted it is uncontroverted that no sales were made by plaintiff from June 1, 1968 to June 5,1968 inclusive.
Defendant now moves for summary judgment on the ground that there was no binding contract between the parties, but only an agreement which could be terminated at any time on notice, and further, that payment of commissions to the plaintiff on sales to Ackerman-New York, Inc. would be illegal under said Robinson-Patman Act.
Plaintiff, in its cross motion for summary judgment, contends that defendant’s letter of January 2, 1968, constituted a binding contract, thereby obligating defendant for the commissions claimed. As to defendant’s use of the Robinson-Patman Act as a defense, plaintiff asserts that the statute makes an exception where there have been services rendered, and claims that said exception applies to the relationship existing between plaintiff and Ackerman-New York, Inc.
Implicit in both the motion and cross motion for summary judgment is the assumption that there is no issue of fact to be tried. (CPLR 3212, subd. [b].)
While the terms of the January 2, 1968, letter were apparently followed by both parties, exhibits submitted as part of the moving papers indicate that plaintiff was not completely satisfied and questioned the terms as presented. In his letter of January 11, 1968, plaintiff’s president alluded to “ differences between us ” and “ settling these problems so that we may get on with the business of selling.” Clearly, this does not reflect the attitude of a man who feels he has entered into a binding agreement, but rather that the matter was still in the stage of negotiations. (Scheck v. Francis, 26 N Y 2d 466, 470.) It is not disputed that plaintiff did not return a signed copy of the proposed agreement to defendant. So that, if the circumstances were reversed, plaintiff could not be held to such written proposal which it had not signed. Accordingly, it would be manifestly unjust to hold defendant liable for having sub *688 mitted the written proposal which was never assented to by plaintiff.
It is the decision of this court that, as a matter of law, no contract existed between plaintiff and defendant, and therefore that defendant could terminate its relationship with the plaintiff at any time.
With regard to the alleged violation of the Bobinson-Patman Act, subdivision (c) of section 2 thereof provides: “It shall be unlawful for any person engaged in commerce, in the course of such commerce, to pay or grant, or to receive or accept, any: thing of value as a commission, brokerage or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares, or merchandise, either to the other party to such transaction or to an agent, representative, or other intermediary therein where such intermediary is acting in fact for or in behalf, or is subject to the direct or indirect control, of any party to such transactions other than the person by whom such compensation is so granted or paid.” (U. S. Code, tit. 15, § 13, subd. [e].)
When the dispute herein arose, Mr. Morton L. Ackerman was the sole stockholder of both plaintiff and Ackerman-New York, Inc. Both corporations shared offices together. Whatever benefit accrued to plaintiff by way of commissions paid for sales to Ackerman-New York, Inc. must of necessity benefit the latter, and most certainly would benefit Mr. Morton L. Ackerman as owner of both corporations. It is not difficult, to foresee the advantage this would give Ackerman-New York, Inc., over its competitors. It would be in a position to discount the Mohawk line by at least 4% without ultimately suffering any financial loss. While there has been no proof or allegation that Ackerman-New York, Inc. has used its position to cause price discrimination, there need be none (Webb-Crawford Co. v. Federal Trade Comm,., 109 F. 2d 268, cert. den. 310 U. S. 638). Because of the relationship existing between plaintiff and Ackerman-New York, Inc. any commissions paid by defendant to plaintiff would constitute a violation of the Bobinson-Patman Act and would, therefore, be unlawful. The payment and receipt of commissions under such circumstances are exactly what the statute intended to prevent and prohibit. To hold otherwise would be contrary to the statutory scheme.
Defendant’s motion for summary judgment is hereby granted. Plaintiff’s cross motion is denied.